IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| DAVID K. SEALY, KERRY CARTER, AND HARVEY L. DAVIS, on behalf of the Old Dominion 401(k) Retirement Plan, and all others similarly situated, | ) ) ) ) ) |
| Plaintiffs, | ) ) ) |
| v. | ) ) 1:23-CV-819 |
| OLD DOMINION FREIGHT LINE, INC., | ) ) ) |
| Defendant. | ) ) |

**MEMORANDUM OPINION AND ORDER**

THOMAS D. SCHROEDER, District Judge.

This dispute concerns alleged violations of the Employee Retirement Income Security Act, 29 U.S.C. §§ 1001 et seq. ("ERISA") by Defendant Old Dominion Freight Line, Inc. ("Old Dominion"). Before the court is Old Dominion's motion to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). (Doc. 13.) Plaintiffs David K. Sealy, Kerry Carter, and Harvey L. Davis have responded in opposition (Doc. 17), and Old Dominion has replied (Doc. 18). The court held argument on the motion on April 22, 2024. For the reasons set forth below, Old Dominion's motion will be denied.

I. **BACKGROUND**

This is the second case brought by Harvey Davis against Old Dominion. The first, case number 1:22-CV-990, resulted in

dismissal for lack of standing. Davis v. Old Dominion Freight Line, Inc., No. 1:22-CV-990, 2023 WL 5751524 (M.D.N.C. Sept. 6, 2023). Davis raised similar allegations there as here, but he has now added two plaintiffs. The current action apparently fixes the missing paragraphs in the first complaint. Id. at *4 (discussing missing "phantom paragraphs").[1] Nevertheless, as discussed below, Plaintiffs' complaint still contains material errors.

The present complaint mirrors those filed by Plaintiffs' counsel around the country, including in this district. McDonald v. Lab'y Corp. of Am. Holdings, No. 1:22-CV-680, Docket Entry 15, First Amended Complaint (M.D.N.C. Nov. 14, 2022); Lopez v. Embry-Riddle Aeronautical Univ., Inc., No. 6:22-CV-1580, Docket Entry 1, Complaint (M.D. Fla. Sept. 1, 2022); Cevasco v. Allegiant Travel Co., No. 2:22-CV-1741, Docket Entry 69, Amended Complaint (D. Nev. Apr. 23, 2024); Hagins v. Knight-Swift Transportation Holdings Inc., No. 2:22-CV-1835, Docket Entry 1, Complaint (D. Ariz. Oct. 26, 2022); Gotta v. Stantec Consulting Servs. Inc., No. 2:20-CV-1865, Docket Entry 1, Complaint (D. Ariz. Sept. 24, 2020); see also Calcano v. Swarovski N. Am. Ltd., 36 F.4th 68, 77-78 (2d Cir. 2022) (stating that "[j]udicial experience and common sense

_____

[1] Plaintiffs' explanation that they did not "catch" that their earlier draft of the Davis complaint was incomplete until after the court granted the motion to dismiss (Doc. 17 at 13-14) is contrary to the record. Old Dominion discussed the complaint's missing paragraphs in its reply brief filed nearly six months before the court issued its memorandum opinion and order. (Doc. 21 at 5 in case no. 1:22-CV-990.)

suggest that the errors, oddities, and omissions in the complaints are a result of their mass production" and chastising plaintiffs for filing numerous "cut-and-paste and fill-in-the-blank pleadings" (internal quotation marks omitted)). The facts alleged in the complaint before the court (Doc. 1), which the court accepts as true for the purpose of Old Dominion's motion to dismiss, show the following:

Plaintiffs David K. Sealy, Kerry Carter, and Harvey L. Davis are participants in Old Dominion's 401(k) retirement plan. (Id. ¶ 23.) Old Dominion, a trucking and transportation company, is a statutory fiduciary of the plan within the meaning of ERISA, 29 U.S.C. § 1002(21)(A). (Id. ¶ 52.) Plaintiffs allege that each of their accounts suffered losses because of an "excessive amount [of] administrative fees." (Id. ¶ 45.) Moreover, they allege that the plan "suffered millions of dollars in losses caused by Old Dominion's fiduciary breaches." (Id. ¶ 48.)

Old Dominion's recordkeeper, Empower, receives compensation from the plan. (Id. ¶ 71.) Plaintiffs allege that Empower has received "direct compensation" worth $67 to $82 per plan participant between 2016 and 2022. (Id. ¶ 72.) Plaintiffs derive these figures from Old Dominion's IRS Form 5500s, which they contend show "that Old Dominion does not even know how much the

Plan is paying Empower." (Id. ¶ 92*.)[2] Plaintiffs state that this compensation should have been "no more than $25 annually." (Id. ¶ 73.) Plaintiffs cite four other plans that use "different well-respected and well-known national recordkeepers for billion-dollar plans," which allegedly pay $10.57, $28.11, $8.26, and $6.91 per participant for "direct record-keeping and administrative service costs," respectively. (Id. ¶ 99.) Plaintiffs also allege that Fidelity Investments stipulated in another lawsuit that the value of its recordkeeping services was $14 to $21 per person. (Id. ¶ 104 (citing Moitoso et al. v. FMR, et al., 451 F.Supp.3d 189, 214 (D. Mass. 2020)).)

Plaintiffs assert that Empower also receives "indirect compensation" via "float" on plan participant money and via "revenue sharing." (Id. ¶ 74.) Float fees are the investment returns or interest earned on money that sits in Empower's clearing account for 2 to 3 days when participants deposit or withdraw money from their individual accounts. (Id. ¶ 75.) Plaintiffs contend that Old Dominion has agreed that Empower could keep the investment returns and/or interest earned but did not consider, monitor, track or include the amount of compensation Empower receives from the plan via float, which "would have offset the other direct and

---

[2] Plaintiffs incorrectly numbered the paragraphs in the complaint 91, 92, 93, 91, 92, 93, 94, etc. The court will asterisk the repeated paragraph numbers but will otherwise maintain the paragraph numbers as written in the complaint.

4

indirect compensation" paid to Empower.  (Id. ¶¶ 75, 78.)

The revenue sharing compensation is a fee paid to the recordkeeper based on the amount of assets in the plan.  (Id. ¶ 79.)  Plaintiffs allege that, "[h]ad Old Dominion prudently considered, monitored, tracked, disclosed, and negotiated" the revenue sharing compensation, it would have been able to "reduce the excessive compensation."  (Id. ¶ 85.)  Plaintiffs further allege that Old Dominion failed to conduct "meaningful requests for proposals [] at reasonable intervals."  (Id. ¶ 90.)

Plaintiffs also allege that Old Dominion failed to "determine whether the Plan was invested in the lowest-cost share class available for the Plan's mutual funds."  (Id. ¶ 117.)  They allege that the expense ratio for the JPMorgan Smart Retirement Fund R5 share class was about 10 basis points higher than the R6 share class funds of the same.  (Id. ¶ 120 (providing chart with fee comparison).)

In reliance on these allegations, Plaintiffs plead one claim for relief for breach of the fiduciary duty of prudence.  (Id. ¶¶ 131-37.)  They seek declaratory relief, damages, removal of the fiduciaries allegedly responsible, and other forms of relief.  (Id. at 36-37.)

On December 8, 2023, Old Dominion moved to dismiss the complaint for failure to state a claim upon which relief can be granted, pursuant to Federal Rule of Civil Procedure 12(b)(6).

(Doc. 13.)  Following argument on the motion on April 22, 2024, it is ready for resolution.

## II.  ANALYSIS

### A.  Standard of Review

Federal Rule of Civil Procedure 8(a)(2) provides that a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. (8)(a)(2).  A Rule 12(b)(6) motion to dismiss is meant to "test[] the sufficiency of a complaint" and not to "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses."  Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir. 1992).  To survive such a motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).

In considering a Rule 12(b)(6) motion, a court "must accept as true all of the factual allegations contained in the complaint," Erickson v. Pardus, 551 U.S. 89, 94 (2007) (per curiam), and all reasonable inferences must be drawn in the non-moving party's favor, Ibarra v. United States, 120 F.3d 472, 474 (4th Cir. 1997). However, the court "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments."  Giarratano v. Johnson, 521 F.3d 298, 302 (4th Cir. 2008).  Rule 12(b)(6) protects against

6

meritless litigation by requiring sufficient factual allegations "to raise a right to relief above the speculative level" so as to "nudge[] the[] claims across the line from conceivable to plausible." Twombly, 550 U.S. at 570; see Iqbal, 556 U.S. at 678. Thus, mere legal conclusions should not be accepted as true, and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678.

**B.  Breach of Duty of Prudence**

"Congress enacted ERISA to ensure that employees would receive the benefits they had earned, but Congress did not require employers to establish benefit plans in the first place." Conkright v. Frommert, 559 U.S. 506, 516 (2010). As a result, "ERISA represents a 'careful balancing' between ensuring fair and prompt enforcement of rights under a plan and the encouragement of the creation of such plans." Id. at 517 (internal quotation marks omitted).

The duty of prudence is "shorthand for a fiduciary's responsibility to act 'with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent [person] acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims." Reetz v. Aon Hewitt Inv. Consulting, Inc., 74 F.4th 171, 182 (4th Cir. 2023) (quoting 29 U.S.C. § 1104). "This

7

means that a fiduciary must 'give[] appropriate consideration to those facts and circumstances that, given the scope of such fiduciary's investment duties, the fiduciary knows or should know are relevant to the particular investment or investment course of action involved.'" Stegemann v. Gannett Co., Inc., 970 F.3d 465, 473 (4th Cir. 2020) (quoting 29 C.F.R. § 2550.404a-1(b)(1)(i)) (alteration in original).

"[T]he duty of prudence is not results oriented; it looks for a reasoned process." Reetz, 74 F.4th at 182. The duty of prudence includes "several sub-duties" derived from the common law of trusts, including the duty to investigate and monitor. Stegemann, 970 F.3d at 474; Tibble v. Edison Int'l, 575 U.S. 523, 530 (2015) ("A plaintiff may allege that a fiduciary breached the duty of prudence by failing to properly monitor investments and remove imprudent ones.") Though Twombly and Iqbal apply in the ERISA context, the inquiry on a motion to dismiss "will necessarily be context specific." Fifth Third Bancorp v. Dudenhoeffer, 573 U.S. 409, 425 (2014) (stating that courts must engage in "careful, context-sensitive scrutiny of a complaint's allegations" to "divide the plausible sheep from the meritless goats").

Old Dominion raises two grounds to dismiss Plaintiffs' claim for breach of the duty of prudence. First, Old Dominion argues that the claim is time-barred because it reaches back beyond the six-year statute of limitations. Second, Old Dominion argues that

8

Plaintiffs' contention that the plan pays Empower excessive fees through recordkeeping fees and investment management fees is based on incorrect figures and a misapprehension of the duty of prudence.

### 1. Statute of Limitations

Old Dominion first contends that the alleged class period, September 21, 2016, stretches beyond ERISA's six-year statute of limitations. (Doc. 14 at 13-14.) Because the complaint was filed on September 27, 2023, Old Dominion claims instead that it must be dismissed to the extent allegations pertain to conduct prior to September 27, 2017. (Id.) Plaintiffs respond that there is no need to dismiss the complaint because, in their view, the class period can be determined at a later stage. (Doc. 17 at 14.)

Section 413 of ERISA states that "[n]o action may be commenced . . . with respect to a fiduciary's breach of any responsibility, duty, or obligation . . . after the earlier of six years after . . . the date of the last action which constituted a part of the breach or violation." 29 U.S.C. § 1113. The parties agree that the allegations in this case are subject to this time limitation. In light of this, the court sees no reason to dismiss any claim in part at this time on this ground because the class, if certified, would not extend beyond the proper limitations period. Cf. Clark v. Duke Univ., No. 1:16-CV-1044, 2018 WL 1801946, at *6-7 (M.D.N.C. Apr. 13, 2018) (addressing statute of limitations issue at class certification stage).

2. **Fees**

The court turns to Old Dominion's principal contentions regarding Plaintiffs' recordkeeping and investment management fees. Before doing so, the court must resolve the parties' dispute over which documents may be considered on this motion.

a. **Judicial Notice**

Plaintiffs dispute that the court may take judicial notice of exhibits filed by Old Dominion in support of its motion to dismiss. (<u>See</u> Doc. 15 ("Brooks Declaration" and exhibits); Doc. 17 at 15).) Under limited exceptions, a court may consider documents beyond the complaint without converting a motion to dismiss into one for summary judgment. <u>Goldfarb v. Mayor & City Council of Baltimore</u>, 791 F.3d 500, 508 (4th Cir. 2015). A court may properly consider documents that are "explicitly incorporated into the complaint by reference and those attached to the complaint as exhibits." <u>Goines v. Valley Cmty. Servs. Bd.</u>, 822 F.3d 159, 166 (4th Cir. 2016). It also may take judicial notice of facts that are "matters of public record." <u>Justice 360 v. Stirling</u>, 42 F.4th 450, 455 (4th Cir. 2022).

Courts routinely take judicial notice of Form 5500s. <u>See, e.g.</u>, <u>Garnick v. Wake Forest Univ. Baptist Med. Ctr.</u>, 629 F. Supp. 3d 352, 364 n.5 (M.D.N.C. 2022) ("Form 5500s are unquestionably matters of public record."). Here, Plaintiffs reference and even include screenshots of Old Dominion's 2022 Form 5500 in the

10

complaint.  (Doc. 1 ¶¶ 55, 75, 93, 91*.)  The court thus takes judicial notice of the Old Dominion plan's Form 5500s.  (Doc. 15, Exs. G-I.)

The court declines, however, to take judicial notice of Old Dominion's other exhibits, which are "Rule 408(b)(2) disclosures" for years 2017 through 2022 and "Master Services Agreements" between Old Dominion and Empower and predecessor companies.  (Id., Exs. A-F, J-L.)  Old Dominion has not shown that these are public records or referenced in the complaint.  At oral argument, Old Dominion asserted that the allegations in the complaint at paragraphs 84 and 120 were taken from the fee disclosures without citation, which, it contended, should permit the court to rely on them.  In response, Plaintiffs argued that those allegations of the complaint were taken from public information available on Google.

At this stage, the court accepts Plaintiffs' representation, though not without reservation.  Circuit courts have refused to reward gamesmanship by plaintiffs seeking to avoid notice by simply omitting citation of or attaching a document that contains information contradictory to the complaint.  GFF Corp. v. Associated Wholesale Grocers, Inc., 130 F.3d 1381, 1385 (10th Cir. 1997) (collecting cases and raising concern that "a plaintiff with a deficient claim could survive a motion to dismiss simply by not attaching a dispositive document upon which the plaintiff

11

relied"). Had Old Dominion made a more persuasive showing that the fee disclosures must have been the source of the expense ratios alleged in the complaint, the court may have concluded otherwise.

Moreover, Old Dominion's cases in support of judicial notice do not involve these specific document types or are otherwise distinguishable. See Dorman v. Charles Schwab Corp., No. 17-CV-00285, 2019 WL 580785, at *3 (N.D. Cal. Feb. 8, 2019) (noting that Plaintiff did not object to taking judicial notice); Matney v. Barrick Gold of N. Am., Inc., No. 2:20-CV-275, 2022 WL 1186532, at *3 (D. Utah Apr. 21, 2022) (taking judicial notice of "Master Trust Agreement" and other fund documents that were referenced in the complaint), aff'd sub nom. Matney v. Barrick Gold of N. Am., 80 F.4th 1136 (10th Cir. 2023).[3]

The court now turns to the merits of Old Dominion's motion regarding the alleged excessive recordkeeping and investment management fees.

### b. Recordkeeping Fees

"Recordkeepers help plans track the balances of individual accounts, provide regular account statements, and offer informational and accessibility services to participants." Hughes

---

[3] Upon closer review of Matney, Old Dominion appears incorrect in its argument that the "Tenth Circuit concluded that it was appropriate for the District Court to consider fee disclosures reflecting the revenue share credit for the challenged share class." (Doc. 14 at 18.) Rather, the court in Matney took notice of revenue sharing credits that were reported in publicly filed Form 5500s. Matney, 2022 WL 1186532, at *7 n.11 (citing Form 5500, not fee disclosure).

v. Northwestern Univ., 595 U.S. 170, 174 (2022). Fees for recordkeepers are typically paid "as a percentage of the assets for which the recordkeeper is responsible" or "at a flat rate per participant account." Id.

Courts assessing recordkeeping fee claims have required that plaintiffs allege a "meaningful benchmark" or some "kind of context" as a point of comparison to determine whether the fee is "excessive relative to the services rendered." Smith v. CommonSpirit Health, 37 F.4th 1160, 1169 (6th Cir. 2022) (quoting Young v. Gen. Motors Inv. Mgmt. Corp., 325 F. App'x 31, 33 (2d Cir. 2009) (per curiam)). A benchmark is meaningful if the "complaint alleges that the recordkeeping services rendered by the chosen comparators are similar to the services offered by the plaintiff's plan." Matney, 80 F.4th at 1148-49 ("The allegations must permit an apples-to-apples comparison."); Matousek v. MidAmerican Energy Co., 51 F.4th 274, 279-80 (8th Cir. 2022) ("Rather than point to the fees paid by other specific, comparably sized plans, the plaintiffs rely on industry-wide averages."); Hughes v. Nw. Univ., 63 F.4th 615, 632 (7th Cir. 2023) (discussing allegation of similar quality of services may not be required where plaintiff alleges that recordkeepers are fungible).

Plaintiffs allege that Old Dominion did not adequately monitor recordkeeping fees, did not conduct "meaningful requests for proposals," and did not "accurately disclose how much

13

compensation Empower receives" in its Form 5500. (Doc. 1 ¶¶ 85, 90, 93.) Plaintiffs claim that Empower receives "excessive direct compensation" (id. ¶ 73) and indirect compensation in the form of "float" income and revenue sharing (id. ¶ 74).

Old Dominion moves to dismiss Plaintiffs' recordkeeping fees claim on the grounds that it is "(1) [] contradicted by judicially noticeable documents; and (2) [] premised on the erroneous legal presumption that float income is a Plan asset that might inure to the benefit of plan participants." (Doc. 14 at 20.) Old Dominion first attacks Plaintiffs' "demonstrably false allegations" regarding direct compensation paid to Empower by pointing to its Form 5500s to show that Plaintiff cited a fee figure that is approximately twice what the plan paid in recordkeeping fees. (Id. at 20-21.) It next contends that Plaintiffs' allegations of recordkeeping fees are inflated by improperly attributing float income to recordkeeping compensation. (Id. at 23-24.)

Plaintiffs do not contest that they have pulled the incorrect figure from the Form 5500, but instead merely contest that the court should take judicial notice. (Doc. 17 at 18 (citing $67 per year as direct fees in response brief and not addressing that this figure is derived from the wrong line in the Form 5500).) Plaintiffs also argue that they have not improperly attributed float income to recordkeeping compensation (id. at 16-17) and that

14

revenue sharing further inflates recordkeeping fees (id. at 19-20).

Some of Plaintiffs' direct compensation allegations for recordkeeping services are verifiably inaccurate and contradicted by public documents that Plaintiffs incorporate in the complaint. Plaintiffs allege that the per-participant recordkeeping fee was $67 in 2022. (Doc. 1 ¶ 72.) Plaintiffs calculate this number by dividing alleged "direct compensation" of $1,791,711 by 26,874, the alleged number of plan participants. (Id.) As Old Dominion argues, however, this figure is derived from compensation paid for "investment advisory" services, not recordkeeping fees. (See Doc. 15 at 199 (listing service code 26 for $1,791,772 paid to Empower Advisory Group, LLC)); Dep't of Lab., Instructions for Form 5500, at 30, https://www.dol.gov/sites/dolgov/files/EBSA/employers-and-advisers/plan-administration-and-compliance/reporting-and-filing/form-5500/2023-instructions.pdf (last accessed May 9, 2024) (stating that service code 26 is for "investment advisory" services).

By contrast, the Form 5500 states that the plan paid $1,064,728 in "recordkeeping and information management," "participant loan processing," and "recordkeeping fees," to Empower Annuity Insurance Company. (Doc. 15 at 199 (listing service codes 15, 37, 50, and 64, which include recordkeeping services)); Instructions for Form 5500, supra, at 30. Plaintiffs

15

made this same error for 2020 and 2021, alleging $1,506,318 instead of $672,571 in 2020 and $1,708,031 instead of $886,053 in 2021. (Doc. 15 at 113, 156.) Plaintiffs' allegations of recordkeeping fees for these three years are therefore not entitled to a presumption of truth. <u>Matney</u>, 80 F.4th at 1151 (affirming district court that "refus[ed] to accept as true factual allegations contradicted by [] properly considered documents"); <u>Dover v. Yangfeng Auto. Interior Sys. I LLC</u>, 563 F. Supp. 3d 678, 689 (E.D. Mich. 2021) (discrediting plaintiffs' allegation of excessive recordkeeping fees when plan's publicly filed Form 5500s contradicted plaintiffs' figures, and holding that "[f]actually inaccurate allegations are not plausible allegations").[4]

Despite pointing out these errors, however, Old Dominion has not shown that the falsity of the $67 fee requires dismissal. Plaintiffs list four similarly sized plans: McLaren Employees' 403(b) Retirement Plan, International Paper Company Hourly Savings Plan, DXC Technology Matched Asset Plan, and Savings and Supplemental Retirement Plan of Novant Health, Inc. (Doc. 1 ¶ 99.) The alleged "Direct Recordkeeping and administrative service costs" per participant for these plans are $10.57, $28.11, $8.26,

---

[4] At oral argument, Plaintiffs argued that their claim covers "total" compensation paid to Empower. However, Plaintiffs have not cited any case that suggests that the court should consider "total" compensation across multiple services, rather than review the fee paid for each service independently. This argument is also inconsistent with Plaintiffs' actual allegation in the complaint, which only alleges investment advisory fees rather than "total" fees.

and $6.91, respectively.  (Id.)  Though the complaint does not so state, these fee figures align with these plans' reported fees in their Form 5500s for 2022.  See Dep't of Lab., Form 5500 Search, at https://www.efast.dol.gov/5500search.  Old Dominion has not addressed these other funds at all, including whether they allow for an "apples-to-apples comparison."  Matney 80 F.4th at 1149.

In Old Dominion's view, the proper figure for the 2022 Form 5500 should have been $1,064,728, which would produce a $39.61 per participant fee.  (Doc. 14 at 21.)  This $39.61 fee is still higher than the alleged fees of the other paragraph 99 plans, and Old Dominion has not argued that Plaintiffs' claims are not plausible in light of this figure.  Moreover, Old Dominion has neither argued that the direct recordkeeping fee allegations for 2017 to 2019 are erroneous, nor that the court should not consider these allegations as points of comparison with the paragraph 99 plans.  (Doc. 1 ¶ 72 (alleging per participant direct compensation of $66-$87 for 2017-19, which are also higher than the fees of the paragraph 99 plans).)

Plaintiffs also allege, without any reference to the specific services provided for the other plans, that "[t]he comparable Plans [in paragraph 99] received at least the same services as the Old Dominion Plan."  (Id. ¶ 100.)  The court accepts this allegation as true, and Old Dominion has not argued that it is insufficient to state a claim.  (Doc. 14 at 22); see Hughes, 63 F.4th at 632

17

(describing plaintiffs' allegation that recordkeeping services are "fungible" and "highly competitive").[5]

Plaintiffs attempt to bolster their recordkeeping fees claim by alleging that Old Dominion pays excessive indirect compensation via "float" income and revenue sharing in addition to direct compensation. (Doc. 1 ¶¶ 81-82.) They have cited no case to support their "float" theory, which is that Empower allegedly receives investment returns and interest on plan participant funds

---

[5] Some circuit courts have suggested that a plaintiff must at least allege more than industry averages to allege a meaningful benchmark. Matousek, 51 F.4th at 279-80. Here, the paragraph 99 benchmarks are more specific than industry averages. However, anyone can search retirement plan Form 5500s and filter by number of participants, total assets, etc. See Dep't of Lab., Form 5500 Search, at https://www.efast.dol.gov/5500search. It is not clear whether the fees listed in filtered Form 5500s enable an apples-to-apples comparison for total recordkeeping fees because the Form 5500s for each of the funds alleged in paragraph 99 state that the recordkeeper also received indirect compensation, but not how much. Singh v. Deloitte LLP, 650 F. Supp. 3d 259, 267 (S.D.N.Y. 2023) (granting motion to dismiss and describing such a comparison as "plainly inapposite" because it "provides little insight" into total recordkeeping fees). Moreover, each Form 5500 lists several service codes that may signify services beyond recordkeeping. Mator v. Wesco Distrib., Inc., No. 2:21-CV-403, 2022 WL 3566108, at *7 (W.D. Pa. Aug. 18, 2022) (rejecting "price tag to price tag" comparison from Form 5500s where service codes were different and indirect compensation was not listed). Because such issues were not raised here, the court expresses no view on their potential application. Also, because the paragraph 99 benchmarks are not challenged, the court need not address Plaintiffs' other alleged benchmarks. These include (1) an allegation that "[a] reasonable total amount of compensation for Empower's specific services provided to the Plan ought to be no more than $25 annually," (Doc. 1 ¶ 73), and (2) a stipulation made in Moitoso v. FMR LLC, 451 F. Supp. 3d 214 (D. Mass. 2020), where a recordkeeper stipulated "the value of the recordkeeping services that [it] provided to the Plan in 2015 and 2016 was $17 per participant," (Doc. 1 ¶ 104). The court therefore draws no inference that these two allegations make Plaintiffs' claims more plausible. Iqbal, 556 U.S. at 681 ("[T]he allegations are conclusory and not entitled to be presumed true."); Johnson v. PNC Fin. Servs. Grp., Inc., No. 2:20-CV-1493, 2021 WL 3417843, at *4 (W.D. Pa. Aug. 3, 2021) (not crediting Moitoso stipulation).

18

that "sits in Empower's clearing account" when participants deposit or withdraw money from their individual accounts. (Id. ¶ 75.) The only factual allegation specific to Empower that Plaintiffs muster is a hypothetical scenario: "If Empower earned just 1% on $500 million in 2022, then Empower pocketed $5 million in float income for 2022 alone." (Id.) Moreover, Plaintiffs have cited no case to suggest that float income should be considered at all for a duty of prudence claim. (Doc. 17 at 16-18 (citing no case and only Department of Labor Field Bulletin No. 2002-03, which provides guidance on how to avoid prohibited transactions).)

As to revenue sharing, Plaintiffs allege that Empower received $500,000 in indirect compensation. (Id. ¶ 84.) Critically, however, Plaintiffs do not allege that this money goes to recordkeeping; rather, Plaintiffs only allege elsewhere in the complaint that revenue sharing, as a general matter, can go to recordkeeping. (Doc. 1 ¶ 80 ("If a fiduciary decides to use revenue sharing to pay for recordkeeping . . . .").) Accordingly, these indirect compensation allegations do not support the plausibility of Plaintiffs' recordkeeping fees claim at this stage. Cf. Hagins, 2023 WL 3627478, at *4 (in nearly identical claim brought by same counsel, denying motion to dismiss based on direct compensation allegations and stating that the "Court need not determine the factual accuracy of Plaintiffs' calculation" as to indirect compensation).

19

In sum, as Old Dominion has not challenged four of Plaintiffs' alleged benchmarks (see Doc. 1 ¶ 99), it has not demonstrated that it is entitled to dismissal of Plaintiffs' recordkeeping fee claim. Garnick, 629 F. Supp. 3d at 366 ("[T]his claim ekes across the plausibility line." (internal quotation marks omitted)).

### c. Investment Management Fees

Investment management fees "compensate a fund for designing and maintaining the fund's investment portfolio." Hughes, 595 U.S. at 173-74. "These fees are usually calculated as a percentage of the assets the plan participant chooses to invest in the fund, which is known as the expense ratio." Id. at 174. "[A] fiduciary normally has a continuing duty of some kind to monitor investments and remove imprudent ones." Tibble, 575 U.S. at 530. "A plaintiff may allege that a fiduciary breached the duty of prudence by failing to properly monitor investments and remove imprudent ones." Id. A plaintiff must generally plead more than the existence of a cheaper fund in the marketplace; rather, the plaintiff must plead a meaningful benchmark. Meiners v. Wells Fargo & Co., 898 F.3d 820, 823-24 (8th Cir. 2018) (observing that "different shares of the same fund" would be a meaningful).

Plaintiffs allege that Old Dominion failed to prudently monitor and select proper share classes of nine investments offered by the Plan. (Doc. 1 ¶ 111.) Specifically, Plaintiffs claim that the expense ratio for target date funds from JPMorgan Smart

Retirement Fund R5 share class is about 10 basis points higher than the R6 share class of the same. (Id. ¶ 120.) They allege this has caused "roughly $22 million in losses" to the plan. (Id. ¶ 124.)

Old Dominion contends that the expense ratios upon which Plaintiffs rely are false. It argues that the R5 share classes are actually cheaper because the plan receives "revenue sharing credit" that reduces the expense ratio by twenty basis points. (Doc. 14 at 15.) On most of the target date funds, in Old Dominion's view, the plan actually saved 10 basis points when compared to the R6 share class. (Id. at 16–17.) Old Dominion points to Matney, where the Tenth Circuit rejected the plaintiff's similar allegation that ignored revenue sharing credit. (Id. at 17–18.) It also argues, in the alternative, that the expense ratios are within the realm of reasonableness. (Id. at 19.)

As noted above, because the fee disclosures filed by Old Dominion are not referenced in the complaint, the court declines to take judicial notice of them. Accordingly, while sensitive to any effort to game the system by stating allegations contrary to factual statements in key documents, GFF Corp., 130 F.3d at 1385, at this preliminary stage the court must accept the alleged expense ratios in paragraph 120, which show higher expense ratios for the R5 share classes in Old Dominion's plan than the R6 share class comparators. (Id. ¶¶ 120-21 (alleging that the R6 share class

21

funds are "different versions of the same investment . . . with identical managers, investment styles, and funds").)

Whether Old Dominion is correct that the fee disclosures demonstrate that its selected funds are, in fact, cheaper for plan participants will be determined at a later stage of the litigation. The court likewise cannot accept Old Dominion's argument that its expense ratios are per se reasonable simply because other cases have found higher expense ratios to be reasonable. (Doc. 14 at 19); Fifth Third Bancorp, 573 U.S. at 425 (rejecting presumption of prudence and instead calling for "careful, context-sensitive scrutiny of a complaint's allegations"). Accordingly, Old Dominion has not demonstrated that Plaintiffs' investment management fee claim warrants dismissal at this stage.

## III. CONCLUSION

For the reasons stated, therefore,

IT IS ORDERED that Old Dominion's motion to dismiss (Doc. 13) is DENIED.

                                    /s/   Thomas D. Schroeder
                                  United States District Judge
May 16, 2024