## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| DAVID K. SEALY, KERRY CARTER and HARVEY L. DAVIS on behalf of the Old Dominion 401(k) Retirement Plan, and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>OLD DOMINION FREIGHT LINE, INC.,<br><br>Defendant. | Case No. 1:23-cv-819-TDS-LPA |

## CLASS ACTION SETTLEMENT AGREEMENT

This Class Action Settlement Agreement (the "Settlement Agreement") is entered into between and among the Class Representatives, all Class Members, and the Defendant.

NOW, THEREFORE, without any admission or concession on the part of the Class Representatives of any lack of merit of the Class Action whatsoever, and without any admission or concession on the part of Defendant as to the merits of the allegations or claims asserted in the Class Action whatsoever, it is hereby STIPULATED AND AGREED, by and among the Settling Parties to this Settlement Agreement, through their respective attorneys, subject to approval of the Court pursuant to Federal Rule of Civil Procedure 23(e), in consideration of the benefits flowing to the Settling Parties hereto from the Settlement Agreement, that all Released Claims as against the Released Parties shall be compromised, settled, released, and dismissed with prejudice, upon and subject to the following terms and conditions:

1. **ARTICLE 1 – DEFINITIONS**

As used in this Settlement Agreement and the Exhibits hereto, unless otherwise defined, the following terms have the meanings specified below:

1.1. "Active Account" means an individual account in the Plan with a balance greater than $0.00 as of December 31, 2025.

1.2. "Administrative Expenses" means expenses incurred in the administration of this Settlement Agreement, including (a) all fees, expenses, and costs associated with

providing the Settlement Notice to the Class Members, excluding any fees and expenses of the Plan's Recordkeeper in connection with the same; (b) related tax expenses (including taxes and tax expenses as described in Section 4.3); (c) all expenses and costs associated with the distribution of funds under the Plan of Allocation, excluding any fees and expenses of the Plan's Recordkeeper in connection with the same; (d) all fees and expenses of the Settlement Administrator and Escrow Agent; (e) all fees and expenses of the Independent Fiduciary, not to exceed $25,000; and (f) all fees, expenses, and costs associated with providing CAFA Notices. Excluded from Administrative Expenses are Defendant's internal expenses and the Settling Parties' respective legal fees and expenses. Administrative Expenses shall be paid from the Gross Settlement Amount.

1.3. "Attorneys' Fees and Costs" means the amount awarded by the Court as compensation for the services provided by Class Counsel. The amount of Attorneys' Fees for Class Counsel shall not exceed one-third of the Gross Settlement Amount and shall be recovered from the Gross Settlement Amount. Class Counsel also will seek reimbursement for all litigation costs and expenses advanced and carried by Class Counsel for the duration of this Class Action, which also shall be recovered from the Gross Settlement Amount.

1.4. "Authorized Administrator" means any entity, other than the Recordkeeper, with appropriate administrative authority under the Plan.

1.5. "Beneficiary" means any individual, trust, estate, or other recipient entitled to receive death benefits payable under the Plan, on either a primary or contingent basis.

1.6. "CAFA" means the Class Action Fairness Act of 2005, 28 U.S.C. §§ 1711-1715.

1.7. "CAFA Notice" means notice of this proposed Settlement to the appropriate federal and state officials pursuant to CAFA, to be issued by the Claims Administrator, substantially in the form set forth in **Exhibit E** hereto.

1.8. "Case Contribution Awards" means the monetary amount awarded by the Court to the Class Representatives in recognition of the Class Representatives' assistance in the prosecution of this Class Action, for which Class Counsel may seek an amount not exceeding $5,000.00 payable from the Gross Settlement Amount. Any such Case Contribution Award shall be subject to the approval of the Court.

1.9. "Class Action" means *David K. Sealy, et al. v. Old Dominion Freight Line, Inc.*, Case No. 1:23-cv-819-TDS-LPA, in the United States District Court for the Middle District of North Carolina.

1.10.  "Class Counsel" means Wenzel Fenton Cabassa, P.A., McKay Law, LLC, and Norris Law Firm, PLLC.

1.11.  "Class Members" means all individuals in the Settlement Class, including the Class Representatives.

1.12.  "Class Period" means the period from October 1, 2016 through December 31, 2025.

1.13.  "Class Representatives" means David K. Sealy, Kerry Carter, and Harvey L. Davis.

1.14.  "Complaint" means the Class Action Complaint filed David K. Sealy on September 27, 2023, which subsumes and includes the initial Complaint filed by Harvey L. Davis on November 18, 2022.

1.15.  "Court" means the United States District Court for the Middle District of North Carolina.

1.16.  "Current Participant" means a member of the Settlement Class who has an Active Account as of December 31, 2025.

1.17.  "Defendant" means Old Dominion Freight Line, Inc., and includes all persons and entities defined as Released Parties.

1.18.  "Defense Counsel" means Jackson Lewis P.C.

1.19.  "Escrow Agent" means American Legal Claims Services, LLC.

1.20.  "ERISA" means the Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. § 1001, *et seq.*

1.21.  "Final Fairness Hearing" means the hearing scheduled by the Court to consider (a) any objections by Class Members to the Settlement; (b) Class Counsel's petition for Attorneys' Fees and Costs and Class Representatives' Case Contribution Awards; and (c) whether to finally approve the Settlement under Fed. R. Civ. P. 23(e). The Final Fairness Hearing may be conducted in person, telephonically or by videoconference, at the sole discretion of the presiding United States District Judge or United States Magistrate Judge.

1.22.  "Final" means, with respect to any judicial ruling, order, or judgment, that the period for any motions for reconsideration, motions for rehearing, appeals, petitions for certiorari, or the like ("Review Proceeding") has expired without the initiation of a Review Proceeding, or, if a Review Proceeding has been timely initiated, that it has been fully and finally resolved, either by court action or by voluntary action of any party, without any possibility of a reversal, vacatur, or modification of any judicial

ruling, order, or judgment, including the exhaustion of all proceedings in any remand or subsequent appeal and remand. The Settling Parties agree that absent an appeal or other attempted Review Proceeding, the Final Approval Order becomes Final thirty (30) calendar days after its entry by the Court.

1.23. "Final Approval Order" means the entry of the order and final judgment approving the Settlement Agreement, implementing the terms of this Settlement Agreement, and dismissing the Class Action with prejudice, to be proposed by the Settling Parties for approval by the Court, in substantially the form attached as **Exhibit D** hereto.

1.24. "Former Participant" means a member of the Settlement Class who does not have an account in the Plan as of December 31, 2025.

1.25. "Gross Settlement Amount" means the sum of ONE MILLION, NINE HUNDRED THOUSAND DOLLARS ($1,900,000.00), contributed to the Qualified Settlement Fund in accordance with Article 5. The Gross Settlement Amount shall be paid by Defendant and/or its fiduciary liability insurer. The Gross Settlement Amount shall be the full and sole monetary payment to the Settlement Class, Plaintiffs, and/or Class Counsel, made by or on behalf of Defendant in connection with the Settlement, effectuated through this Settlement Agreement. Neither Defendant nor its insurer will make any additional payment in connection with the Settlement of the Class Action.

1.26. "Independent Fiduciary" means Fiduciary Counselors Inc., which has no relationship to any of the Settling Parties and will serve as the independent fiduciary to the Plan with the power to approve and authorize the settlement of Released Claims on behalf of the Plan in accordance with Section 2.1.

1.27. "Net Settlement Amount" means the Gross Settlement Amount minus: (a) all Attorneys' Fees and Costs paid to Class Counsel as authorized by the Court; (b) all Case Contribution Awards as authorized by the Court; (c) all Administrative Expenses; and (d) a contingency reserve not to exceed $50,000 that is set aside by the Settlement Administrator for: (1) Administrative Expenses incurred before the Settlement Effective Date but not yet paid; (2) Administrative Expenses estimated to be incurred after the Settlement Effective Date; and (3) an amount estimated for adjustments of data or calculation errors.

1.28. "Person" means an individual, partnership, corporation, governmental entity or any other form of entity or organization.

1.29. "Personally Identifiable Information" or "PII" means or refers to information or data that can identify a specific Class Member, such as name, address, social security

number, e-mail address, Plan account balance data, phone number, date and place of birth, and other information regarded as personal data.

1.30. "Plaintiffs" means the Class Representatives and each member of the Settlement Class.

1.31. "Plan" means the Old Dominion 401(k) Retirement Plan, and each of its predecessor plans or successor plans, individually and collectively, and any trust created and attendant to all such plans.

1.32. "Plan of Allocation" means the method of allocating settlement funds to Class Members. A proposed form of the Plan of Allocation is attached hereto as **Exhibit B**.

1.33. "Preliminary Approval Order" means the order of the Court in substantially the form attached hereto as **Exhibit C**, whereby the Court preliminarily approves this Settlement.

1.34. "Qualified Settlement Fund" means the interest-bearing settlement fund account to be established and maintained by the Escrow Agent in accordance with Article 5 herein and referred to as the Qualified Settlement Fund (within the meaning of Treas. Reg. § 1.468B-1).

1.35. "Recordkeeper" means the entity or entities that maintain electronic records of the Plan's participants and their individual accounts.

1.36. "Released Claims" means any and all past, present, and future actual or potential claims (including but not limited to claims for any and all losses, damages, unjust enrichment, attorneys' fees, disgorgement, litigation costs, injunction, declaration, contribution, indemnification or any other type or nature of legal or equitable relief), actions, demands, rights, obligations, liabilities, expenses, costs, and causes of action, accrued or not, whether arising under federal, state, or local law, whether by statute, contract, or equity, whether brought in an individual or representative capacity, whether accrued or not, whether known or unknown, suspected or unsuspected, foreseen or unforeseen based in whole or in part on acts or failures to act during the Class Period:

    1.36.1. That were asserted or could have been asserted in the Class Action, or that arise out of, relate to, or are based on any of the allegations, acts, omissions, facts, matters, transactions, or occurrences that were alleged, asserted, or set forth in the Complaint; or

    1.36.2. That arise out of, relate in any way to, are based on, or have any connection with: (a) the selection, oversight, retention, monitoring, compensation, fees,

or performance of the Plan's investment options, payments to or costs for recordkeeping fees, or expenses of all Plan service providers; (b) causing the Plan to pay excessive direct or indirect fees, compensation, excessive float compensation, and/or excessive revenue sharing compensation; (c) disclosures or failures to disclose information regarding the Plan's investment options; (d) the management, oversight or administration of the Plan; (e) the conduct of the Plan's fiduciaries with respect to any aspect of management, oversight, or administration of the Plan; (f) any miscellaneous Plan recordkeeping and administrative costs; and/or (g) alleged breach of the duty of loyalty, care, prudence, diversification, or any other fiduciary duties or prohibited transactions, self-dealing, under ERISA with respect to the foregoing; (h) and/or any conduct related to fiduciary involvement with the Plan's forfeiture account and/or the use of Plan proceeds from the forfeiture account for allegedly improper purposes that purportedly do not serve the interests of Plan participants.

1.36.3. That would be barred by *res judicata* based on entry of the Final Approval Order; or

1.36.4. That relates to the direction to calculate, the calculation of, and/or the method or manner of allocation of the Qualified Settlement Fund to the Plan or any Class Member in accordance with the Plan of Allocation; or

1.36.5. That relates to the approval by the Independent Fiduciary of the Settlement, unless brought against the Independent Fiduciary alone.

1.36.6. The Class Representatives, Class Members and the Plan expressly waive and relinquish, to the fullest extent permitted by law, any and all provisions, rights, and benefits conferred by Section 1542 of the California Civil Code, which provides that "A general release does not extend to claims that the creditor or releasing party does not know or suspect to exist in his or her favor at the time of executing the release and that, if known by him or her, would have materially affected his or her settlement with the debtor or released party." and any similar state, federal or other law, rule or regulation or principle of common law of any domestic governmental entity.

1.36.7. "Released Claims" do not include any individual or Single-Plaintiff claims for benefits that the Class Representatives or the Settlement Class have as to the value of their respective vested account balances under the terms of the Plan and according to the Plan's records as of the date the Settlement becomes Final where such claims arise solely under ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B) and solely to the extent such claims do not relate to the Released Claims.

1.37. "Released Parties" means (a) Defendant; (b) Defendant's insurers, co-insurers, and reinsurers; (c) Defendant's direct and indirect past, present, and future affiliates, parents, subsidiaries, divisions, control group entities, joint ventures, predecessors, successors, Successors-In-Interest, assigns, boards of directors and members thereof, officers of all releasee entities, board committees and/or board subcommittees, Trustees, directors, partners, shareholders of all releasee entities, agents, managers, members, employees or heirs (including any individuals who serve or served in any of the foregoing capacities, such as members of the boards of directors that are associated with any of Defendant's past, present, and future affiliates), and each Person that controls, is controlled by, or is under common control with them; (d) the Plan and the Plan's current and past fiduciaries, committees, subcommittees, administrators, plan administrators, recordkeepers, service providers, consultants, Investment Managers, Trustees, attorneys, agents, insurers and parties-in-interest, and all individuals and/or entities who served in these roles, including all individual Committee members; and (e) Defendant's independent contractors, representatives, attorneys, administrators, insurers, fiduciaries, accountants, auditors, advisors, consultants, personal representatives, spouses, heirs, executors, administrators, associates, employee benefit plan fiduciaries, employee benefit plan administrators, employee benefit plan committees and subcommittees, service providers to the Plan (including their owners and employees), members of their immediate families, consultants, subcontractors, and all persons acting under, by, through, or in concert with any of them.

1.38. "Representatives" shall mean representatives, attorneys, agents, directors, officers, or employees.

1.39. "Review Proceeding" shall have the meaning set forth in Section 1.22.

1.40. "Settlement" means the settlement to be consummated under this Settlement Agreement and its exhibits, including any modifications or amendments adopted pursuant to Section 14.13.

1.41. "Settlement Administrator" means American Legal Claim Services, LLC, the entity selected and retained by Class Counsel to administer the Settlement and Plan of Allocation.

1.42. "Settlement Agreement" means this agreement embodying the terms of the Settlement, including any modifications or amendments hereto.

1.43. "Settlement Agreement Execution Date" is the date the final signature is applied to this Settlement Agreement.

1.44.   "Settlement Class" means all persons who were participants in or beneficiaries of the Plan during the Class Period.

1.45.   "Settlement Effective Date" means the date on which the Final Approval Order is Final, provided that by such date the Settlement has not been terminated in accordance with Article 12.

1.46.   "Settlement Notice" means the Notice of Class Action Settlement and Final Fairness Hearing to be sent to Class Members identified by the Settlement Administrator following the Court's issuance of the Preliminary Approval Order, in substantially the form attached hereto as **Exhibit A**. The Settlement Notice shall inform Class Members of a Final Fairness Hearing to be held by the Court, on a date to be determined by the Court, at which any Class Member satisfying the conditions set forth in the Preliminary Approval Order and the Settlement Notice may be heard regarding: (a) the terms of the Settlement Agreement; (b) the petition of Class Counsel for award of Attorneys' Fees and Costs; (c) payment of and reserve for Administrative Expenses; and (d) the Class Representatives' Case Contribution Awards.

1.47.   "Settlement Website" means the internet website established in accordance with Section 13.2.

1.48.   "Settling Parties" means the Defendant, Released Parties, and the Class Representatives, on behalf of themselves, the Plan, and each of the Class Members.

1.49.   "Successor-In-Interest" shall mean a Person or party's estate, legal representatives, heirs, successors or assigns, including successors or assigns that result from corporate mergers or other structural changes.

1.50.   "Transferor" means Old Dominion Freight Line, Inc., or its insurer, as the "transferor" within the meaning of Treas. Reg. § 1.468B-1(d)(1).

2.   **ARTICLE 2 – REVIEW AND APPROVAL BY INDEPENDENT FIDUCIARY, PRELIMINARY SETTLEMENT APPROVAL, AND NOTICE TO THE CLASS**

2.1.   Independent Fiduciary. The Independent Fiduciary, retained by Defendant on behalf of the Plan, Fiduciary Counselors Inc., shall have the following responsibilities, including whether to approve and authorize the settlement of Released Claims on behalf of the Plan.

    2.1.1.   The Independent Fiduciary shall comply with all relevant conditions set forth in Prohibited Transaction Class Exemption 2003-39, "Release of Claims and Extensions of Credit in Connection with Litigation," issued December 31,

2003, by the United States Department of Labor, 68 Fed. Reg. 75,632, as amended ("PTE 2003-39"), in making its determination.

2.1.2. The Independent Fiduciary shall notify Defendant directly of its determination, in writing (with copies to Class Counsel and Defense Counsel), which notification shall be delivered no later than ten (10) calendar days after Class Counsel file their application for attorney's fees and costs with the United States District Court.

2.1.3. All fees and expenses associated with the Independent Fiduciary's determination and performance of its other obligations in connection with the Settlement, up to $25,000, will constitute Administrative Expenses to be deducted from the Gross Settlement Amount and will be paid by the Settlement Administrator.

2.1.4. Defendant, Defense Counsel, and Class Counsel shall respond to reasonable requests from the Independent Fiduciary for information so that the Independent Fiduciary can review and evaluate the Settlement Agreement.

2.1.5. If Defendant concludes that the Independent Fiduciary's determination does not comply with PTE 2003-39 or is otherwise deficient, Defendant shall so inform the Independent Fiduciary within five (5) calendar days of receipt of the determination.

2.1.6. A copy of the Independent Fiduciary determination letter and report shall be provided to Class Counsel, who may file it with the Court in support of Final approval of the Settlement.

2.2. <u>Preliminary Approval</u>. As soon as reasonably possible upon the full execution of this Settlement Agreement by the Settling Parties, the Class Representatives, through Class Counsel, shall file with the Court motions seeking preliminary approval of this Settlement Agreement and for entry of the Preliminary Approval Order in substantially the form attached hereto as **Exhibit C**. While Defendant may not agree with all the averments of Plaintiffs' Motion for Preliminary Approval of Settlement, Defendant will not object to the relief sought in Plaintiffs' motion. The Preliminary Approval Order to be presented to the Court shall, among other things:

2.2.1. Grant the motion to certify the Settlement Class for settlement purposes only under Fed. R. Civ. P. 23(b)(1);

2.2.2. Approve the text of the Settlement Notice for mailing to Class Members;

2.2.3. Determine that under Fed. R. Civ. P. 23(c)(2), the Settlement Notices constitute the best notice practicable under the circumstances, provide due

and sufficient notice of the Final Fairness Hearing and of the rights of all Class Members, and comply fully with the requirements of Fed. R. Civ. P. 23, the Constitution of the United States, and any other applicable law;

2.2.4. Cause the Settlement Administrator to send by first-class mail the Settlement Notice to each Class Member identified by the Settlement Administrator based upon the data provided by the Plan's Recordkeeper;

2.2.5. Provide that, pending final determination of whether the Settlement Agreement should be approved, no Class Member may directly, through Representatives, or in any other capacity, commence any action or proceeding in any court or tribunal asserting any of the Released Claims against Defendant, the Released Parties, and/or the Plan;

2.2.6. Set the Final Fairness Hearing for at least one hundred and twenty (120) days after entry of the Preliminary Approval Order, in order to determine whether: (a) the Court should approve the Settlement as fair, reasonable, and adequate; (b) the Court should enter the Final Approval Order; and (c) the Court should approve the application for Attorneys' Fees and Costs, Class Representatives' Case Contribution Awards, Administrative Expenses incurred to date, and a reserve for anticipated future Administrative Expenses;

2.2.7. Provide that any objections to any aspect of the Settlement Agreement shall be heard, and any papers submitted in support of said objections shall be considered, by the Court at the Final Fairness Hearing if they have been filed validly with the Clerk of the Court and copies provided to Class Counsel and Defense Counsel. To be filed validly, the objection and any notice of intent to participate or supporting documents must be filed or postmarked at least thirty (30) calendar days prior to the scheduled Final Fairness Hearing. Any Person wishing to speak at the Final Fairness Hearing shall file and serve a notice of intent to participate fifteen days (15) before the Final Fairness Hearing;

2.2.8. Provide that any party may file a response to an objection by a Class Member at least seven (7) calendar days before the Final Fairness Hearing;

2.2.9. Provide that the Final Fairness Hearing may be held in person, by telephone, or via videoconference, without further direct notice to the Class Members, other than by notice to Class Counsel, and/or be adjourned or continued by order of the Court; and

      2.2.10. Approve the form of the CAFA Notice attached as Exhibit E and order that upon mailing of the CAFA Notices, Defendant shall have fulfilled their obligations under CAFA.

2.3.    <u>Settlement Administrator</u>. Defendant and Defense Counsel shall use reasonable efforts to respond timely to written requests, including by e-mail, from the Settlement Administrator for readily accessible data that is reasonably necessary to determine the feasibility of administering the Plan of Allocation or to implement the Plan of Allocation.

      2.3.1.  The Settlement Administrator must agree to be bound by the Stipulated Consent Protective Order (ECF No. 34) agreed to by the Settling Parties and any further non-disclosure or security protocol required by the Settling Parties.

      2.3.2.  The Settlement Administrator shall use the data provided by Defendant and the Plan's Recordkeeper solely for the purpose of meeting its obligations as Settlement Administrator, and for no other purpose.

      2.3.3.  The Settlement Administrator shall sign a confidentiality agreement/information security agreement to protect and mask Class Member PII received pursuant to its duties related to Settlement Administration. The Settlement Administrator will create an anonymous numerical identification system allowing only the Settlement Administrator to identify Class Members.

      2.3.4.  In furtherance of protecting and masking Class Member PII, Class Counsel agrees they will not receive Class Member PII but instead will receive Class Member information and data based upon the anonymous numerical identification system created by the Settlement Administrator.

      2.3.5.  At the request of the Settling Parties, the Settlement Administrator shall provide a written protocol addressing how the Settlement Administrator will maintain, and store information provided to it in order to ensure that reasonable and necessary precautions are taken to safeguard the privacy and security of such information.

2.4.    <u>Settlement Notice</u>. By the date and in the manner set by the Court in the Preliminary Approval Order, and unless otherwise set forth below, the Settlement Administrator shall cause to be sent to each Class Member identified by the Settlement Administrator a Settlement Notice in the form and manner to be approved by the Court, which shall be in substantially the form attached hereto as **Exhibit A** or a form subsequently agreed to by the Settling Parties and approved by the Court. The Settlement Administrator shall use commercially reasonable efforts to locate any

Class Member whose Settlement Notice is returned and re-send such documents one additional time.

2.5.   <u>CAFA Notice</u>. No later than ten (10) calendar days after the filing of the motion for preliminary approval of the Settlement, Defendant will mail the CAFA Notice via United States Mail, first class postage, certified, return receipt requested, in substantially the form attached as **Exhibit E** hereto, together with a CD ROM containing the relevant case pleadings, to the Attorney General of the United States, the Secretary of the Department of Labor, and the attorneys general of all states in which Class Members reside, as specified by 28 U.S.C. § 1715.

## 3.    ARTICLE 3 – FINAL SETTLEMENT APPROVAL

3.1.   No later than forty-five (45) calendar days before the Final Fairness Hearing, Class Counsel shall submit to the Court a motion for entry of the Final Approval Order (**Exhibit D**) in the form approved by Class Counsel and Defense Counsel, which shall request approval by the Court of the terms of this Settlement Agreement and entry of the Final Approval Order in accordance with this Settlement Agreement. The Final Approval Order as proposed by the Settling Parties shall provide for the following, among other things, as is necessary to carry out the Settlement consistent with applicable law and governing Plan documents:

3.1.1.   Approval of the Settlement of the Released Claims covered by this Settlement Agreement adjudging the terms of the Settlement Agreement to be fair, reasonable, and adequate to the Plan and the Class Members and directing the Settling Parties to take the necessary steps to effectuate the terms of the Settlement Agreement;

3.1.2.   A determination under Fed. R. Civ. P. 23(c)(2) that the Settlement Notice constitutes the best notice practicable under the circumstances and that due and sufficient notice of the Final Fairness Hearing and the rights of all Class Members has been provided;

3.1.3.   Dismissal with prejudice of the Class Action and all Released Claims, whether asserted by Class Representatives on their own behalf or on behalf of the Class Members, or on behalf of the Plan, without costs to any of the Settling Parties other than as provided for in this Settlement Agreement;

3.1.4.   That the Plan and each Class Member (and their respective heirs, beneficiaries, executors, administrators, estates, past and present partners, officers, directors, agents, attorneys, predecessors, successors, and assigns) shall be: (a) conclusively deemed to have, and by operation of the Final Approval Order shall have, fully, finally, and forever settled, released, relinquished, waived, and discharged the Released Parties from all Released

Claims; and (b) barred and enjoined from suing the Released Parties in any action or proceeding alleging any of the Released Claims.

3.1.5. That each Class Member shall release the Released Parties, Defendant, Defense Counsel, and Class Counsel for any claims, liabilities, and Attorneys' Fees and expenses arising from the allocation of the Gross Settlement Amount or Net Settlement Amount and for all tax liability and associated penalties and interest as well as related Attorneys' Fees and expenses;

3.1.6. That the provisions of Sections 3.1.4 and 3.1.5 shall apply even if any Class Member may thereafter discover facts in addition to or different from those which the Class Members or Class Counsel now know or believe to be true with respect to the Class Action and the Released Claims, whether or not such Class Members receive a monetary benefit from the Settlement, whether or not such Class Members actually received the Settlement Notice, whether or not such Class Members have filed an objection to the Settlement or to any application by Class Counsel for an award of Attorneys' Fees and Costs, and whether or not the objections or claims for distribution of such Class Members have been approved or allowed;

3.1.7. That all applicable CAFA requirements have been satisfied;

3.1.8. That the Settlement Administrator shall have final authority to determine the share of the Net Settlement Amount to be allocated to each Class Member in accordance with the Plan of Allocation approved by the Court;

3.1.9. That, with respect to any matters that arise concerning the implementation of distributions to Class Members who are current participants in the Plan (after allocation decisions have been made by the Settlement Administrator in its sole discretion), all questions not resolved by the Settlement Agreement shall be resolved by the Plan Administrator or other fiduciaries of the Plan, in accordance with applicable law and the governing terms of the Plan; and

3.1.10. That within thirty-one (31) calendar days following the issuance of all settlement payments to Class Members as provided by the Plan of Allocation approved by the Court, the Settlement Administrator shall prepare and provide to Class Counsel and Defense Counsel, using an anonymous numerical identification system that will protect and mask PII, a list of each Class Member who received a settlement payment or contribution from the Qualified Settlement Fund and the amount of such payment or contribution.

3.2. The Final Approval Order and judgment entered by the Court approving the Settlement Agreement shall provide that upon its entry, all Settling Parties, the

Settlement Class and the Plan shall be bound by the Settlement Agreement and the Final Approval Order.

4. **ARTICLE 4 – ESTABLISHMENT OF QUALIFIED SETTLEMENT FUND**

4.1. No later than fifteen (15) calendar days after the Preliminary Approval Order is issued, the Settlement Administrator shall establish the Qualified Settlement Fund with the Escrow Agent. The Settling Parties agree that the Qualified Settlement Fund is intended to be, and will be, an interest-bearing "qualified settlement fund" within the meaning of Section 468B of the Code and Treas. Reg. § 1.468B-1. In addition, the Settlement Administrator timely shall make such elections as necessary or advisable to carry out the provisions of this Section 4.1. If applicable, the Settlement Administrator (as the "administrator" pursuant to Section 4.2) and the Transferor shall fully cooperate in filing the "relation-back election" (as defined in Treas. Reg. § 1.468B-1(j)(2)) to treat the Qualified Settlement Fund as coming into existence as a "qualified settlement fund" within the meaning of Section 468B of the Code and Treas. Reg. § 1.468B-1 as of the earliest permitted date. Such elections shall be made in compliance with the procedures and requirements contained in such regulations. It shall be the responsibility of the Settlement Administrator to prepare and deliver, in a timely and proper manner, the necessary documentation for signature by all necessary parties, and thereafter to cause the appropriate filing to be timely made.

4.2. The "administrator" within the meaning of Treas. Reg. § 1.468B-2(k)(3) shall be the Settlement Administrator. The Settlement Administrator shall timely and properly cause to be filed on behalf of the Qualified Settlement Fund all informational and other tax returns required to be filed in accordance with Treas. Reg. §§ 1.468B-2(k) and -2(l) with respect to the Gross Settlement Amount (including, without limitation, applying for a taxpayer identification number for the Qualified Settlement Fund pursuant to Internal Revenue Service Form SS-4 and in accordance with Treas. Reg. § 1.468B-2(k)(4)). Such returns as well as any election described in Section 4.1 shall be consistent with this Article 4 and, in all events, shall reflect that all taxes (including any estimated taxes, interest, or penalties) on the income earned by the Qualified Settlement Fund shall be deducted and paid from the Gross Settlement Amount as provided in Section 4.3.

4.3. Taxes and tax expenses are Administrative Expenses to be deducted and paid from the Gross Settlement Amount, including but not limited to: (a) all taxes (including any estimated taxes, interest, or penalties) arising with respect to the income earned by the Qualified Settlement Fund, including any taxes or tax detriments that may be imposed upon Defendant with respect to any income earned by the Qualified Settlement Fund for any period during which the Qualified Settlement Fund does not qualify as a "qualified settlement fund" within the meaning of Section 468B of

the Code and Treas. Reg. § 1.468B-1; and (b) all tax expenses and costs incurred in connection with the operation and implementation of this Article 4 (including, without limitation, expenses of tax attorneys and/or accountants and mailing and distribution costs and expenses relating to filing or failing to file the returns described in this Article 4). Such taxes and tax expenses shall be Administrative Expenses and shall be paid timely by the Settlement Administrator out of the Gross Settlement Amount without prior order from the Court. The Settlement Administrator is responsible for withholding and reporting requirements in accordance with Treas. Reg. § 1.468B-2(l) and shall be obligated to make all taxable withholdings from distributions to any Class Member of funds necessary to pay such amounts, including the establishment of adequate reserves for any taxes and tax expenses. Neither the Released Parties, Defense Counsel, nor Class Counsel are responsible, nor shall they have any liability for taxable withholding, compliance, reporting requirements involving the Qualified Settlement Fund or any distributions. The Settling Parties agree to cooperate with the Settlement Administrator, Escrow Agent, each other, and their tax attorneys and accountants (if any) to the extent reasonably necessary to carry out the provisions of this Article 4.

4.4. Within thirty (30) calendar days after the later of (a) the date the Preliminary Approval Order is entered, or (b) the date the Qualified Settlement Fund is established and the Settlement Administrator (or Class Counsel) has furnished to Defendant and/or Defense Counsel in writing the Qualified Settlement Fund name, IRS W-9 Form, and all necessary instructions for furnishing payment by check or wire transfer, the Transferor shall cause ONE HUNDRED THOUSAND DOLLARS ($100,000.00) to be transferred to the Qualified Settlement Fund as the first installment of the Gross Settlement Amount.

4.5. Within ten (10) calendar days after the Settlement Effective Date, the Transferor shall deposit the remainder of the Gross Settlement Amount into the Qualified Settlement Fund.

4.6. The Settlement Administrator shall, at the written direction of Class Counsel, cause the Escrow Agent to invest the Qualified Settlement Fund in short-term United States Agency or Treasury Securities or other instruments backed by the Full Faith and Credit of the United States Government or an agency thereof, or fully insured by the United States Government or an agency thereof, and shall cause the Escrow Agent to reinvest the proceeds of these investments as they mature in similar instruments at their then-current market rates.

4.7. The Settlement Administrator shall not disburse the Gross Settlement Amount or any portion thereof from the Qualified Settlement Fund except as provided in this Settlement Agreement, in an order of the Court, or in a subsequent written

stipulation between Class Counsel and Defense Counsel. Subject to the orders of the Court, the Settlement Administrator is authorized to execute such transactions as are consistent with the terms of this Settlement Agreement.

4.8.    The Settlement Administrator shall be responsible for making provision for the payment from the Qualified Settlement Fund of all taxes and tax expenses, if any, owed with respect to the Qualified Settlement Fund, and for all tax reporting, remittance, and/or withholding obligations, if any, for amounts distributed from it. The Released Parties, Defense Counsel, and/or Class Counsel have no responsibility or any liability for any taxes or tax expenses owed by, or any tax reporting or withholding obligations, if any, of the Qualified Settlement Fund.

4.9.    No later than February 15 of the year following the calendar year in which Defendant or its insurer make any transfer of the Gross Settlement Amount, or any other amount, to the Qualified Settlement Fund on behalf of the Transferor pursuant to the terms of this Article 4, the Transferor shall timely furnish a statement to the Settlement Administrator that complies with Treas. Reg. § 1.468B-3(e)(2), which may be a combined statement under Treas. Reg. § 1.468B-3(e)(2)(ii), and shall attach a copy of the statement to its federal income tax return filed for the taxable year in which Defendants' insurer makes a transfer on its behalf to the Qualified Settlement Fund.

## 5.    ARTICLE 5 - PAYMENTS FROM THE QUALIFIED SETTLEMENT FUND

5.1.    <u>Disbursements from Qualified Settlement Fund prior to Settlement Effective Date</u>. Class Counsel, subject to the approval of Defendant, which approval shall not be unreasonably withheld, shall direct the Escrow Agent to disburse money from the Qualified Settlement Fund as follows:

5.1.1.    Settlement Notice Expenses. After entry of the Preliminary Approval Order, the Escrow Agent shall be directed in writing to disburse from the Qualified Settlement Fund an amount sufficient for the payment of costs of the Settlement Notice. Class Counsel has selected the Settlement Administrator to assist with Class Notice and administration of the Settlement, subject to the agreement of Defendant, which agreement shall not unreasonably be withheld. Any costs, expenses, or fees incurred in connection with the administration of this Settlement shall be paid out of the Qualified Settlement Fund. Neither Defendant nor Defense Counsel are responsible for the Settlement Administrator's work, nor may they be held liable for any act or omission by the Settlement Administrator.

5.1.2.    For taxes and expenses of the Qualified Settlement Fund as provided in Section 4.3.

5.1.3. For fees and expenses of the Independent Fiduciary up to a cap of $25,000. The Escrow Agent shall be directed to disburse money from the Qualified Settlement Fund to pay the reasonable fees and expenses of the Independent Fiduciary (which shall include any Attorneys' Fees of the Independent Fiduciary, subject to the cap of $20,000) retained pursuant to Section 2.1. To the extent Defendant and/or its insurer pay any costs, fees or expenses to the Independent Fiduciary before proceeds from the Qualified Settlement Fund are available for distribution, the Escrow Agent shall be directed to reimburse Defendant and/or its insurer for such amounts.

5.1.4. For fees, expenses, and costs, associated with providing CAFA Notices as provided for in Section 1.2.

5.1.5. For costs and expenses of the Settlement Administrator in implementing the Plan of Allocation and otherwise administering the Settlement.

5.2. Following the payment of the second installment of the Gross Settlement Amount as set forth in Section 4.5, Class Counsel shall direct the Escrow Agent to disburse money from the Qualified Settlement Fund as follows:

5.2.1. For Attorneys' Fees and Costs, as approved by the Court, and no earlier than fifteen (15) calendar days following the Settlement Effective Date.

5.2.2. For the Class Representatives' Case Contribution Awards, as approved by the Court, and no earlier than fifteen (15) calendar days following the Settlement Effective Date.

5.2.3. For costs and expenses of the Settlement Administrator in implementing the Plan of Allocation and otherwise administering the Settlement that were not previously paid.

5.2.4. The Net Settlement Amount will be distributed in accordance with the Plan of Allocation. Pending final distribution of the Net Settlement Amount in accordance with the Plan of Allocation, the Escrow Agent will maintain the Qualified Settlement Fund.

5.3. Implementation of the Plan of Allocation. Class Counsel shall propose to the Court a Plan of Allocation, in substantial conformity to the one attached hereto as **Exhibit B**, which shall provide for the calculation, allocation, and distribution of the Net Settlement Amount. The Settlement Administrator shall be exclusively responsible and liable for calculating the amounts payable to the Class Members pursuant to the Plan of Allocation. After the Settlement Effective Date, and after the amounts payable pursuant to Sections 5.1 and 5.2 have been disbursed, or, in the case of future estimated expenses set aside and withheld, Class Counsel shall direct the

Escrow Agent to disburse the Net Settlement Amount as provided by this Settlement Agreement and the Plan of Allocation. The Plan of Allocation and its provisions shall be final and binding upon Class Members. The Settlement Administrator shall calculate Settlement allocations based upon the Plan of Allocation and the controlling provisions of the Plan Document. If the dollar amount of a settlement payment to a Settlement Class Member is calculated by the Settlement Administrator to be less than $50.00, then that Settlement Class Member's payment or pro rata share shall be zero for all purposes. The Settlement Administrator's calculations regarding payments will be final and binding under the Court-approved Plan of Allocation. The Settlement Administrator shall promptly notify Class Counsel as to the date(s) and amounts(s) of said allocation(s) made to Class Members who are Current Participants. Based upon these allocations, and pursuant to the Plan terms, the Plan Administrator shall then make distributions to the Plan Accounts of Class Members who are Current Participants. For Former Participants, their distributions will be made by checks written to each Former Participant from the Settlement Administrator. The Settlement Administrator shall be responsible for sending checks constituting their share of the Net Settlement Amount allocated to the Former Participants as provided by the Plan of Allocation, as well as complying with all tax laws, rules, and regulations governing distributions with respect to Former Participants. Defendant shall have no liability related to the structure or taxability of such payments. Nothing herein shall constitute approval or disapproval of the Plan of Allocation by Defendant, and Defendant shall have no responsibility or liability for the Plan of Allocation and shall take no position for or against the Plan of Allocation.

All checks issued in accordance with the Plan of Allocation shall expire no later than one hundred twenty (120) calendar days after their issue date. All checks that are undelivered or are not cashed one hundred twenty (120) calendar days after issuance remain the property of the Qualified Settlement Fund.

No sooner than one hundred-eighty (180) calendar days following the Settlement Effective Date, any Net Settlement Amount remaining in the Qualified Settlement Fund after distributions, including costs, taxes, and interest earned on the Qualified Settlement Fund, shall be paid to the Plan's forfeiture account.

5.4.    The Net Settlement Amount distributed pursuant to the Plan of Allocation shall constitute "restorative payments" within the meaning of Revenue Ruling 2002-45 for all purposes.

5.5.    <u>Final List of Class Members</u>. Prior to the disbursement of the Net Settlement Amount to the Plan, the Settlement Administrator shall provide to Defense Counsel and Class Counsel a final list of Class Members, in electronic format, to whom the Net Settlement Amount will be distributed in accordance with the Plan of

Allocation. Such list shall be final, and only persons on the list or their Beneficiaries shall be eligible to receive any recovery from this Settlement.

5.6. After the distribution of the Net Settlement Amount and allocation of the Net Settlement Amount pursuant to the Plan of Allocation, amounts allocable to Class Members who cannot be located or otherwise cannot receive their Settlement payment shall revert to the Qualified Settlement Fund.

## 6. ARTICLE 6 – ATTORNEYS' FEES AND EXPENSES

6.1. Application for Attorneys' Fees and Expenses and Class Representatives' Case Contribution Awards. Class Counsel intends to seek to recover their Attorneys' Fees not to exceed one-third (1/3) of the Gross Settlement Amount, and litigation costs and expenses advanced and carried by Class Counsel for the duration of the Class Action, which shall be recovered from the Gross Settlement Amount.

6.2. Class Counsel will file a motion for an award of Attorneys' Fees and Costs no later than forty-five (45) calendar days before the date of the Final Fairness Hearing specified in the Preliminary Approval Order.

## 7. ARTICLE 7 – RELEASE AND COVENANT NOT TO SUE

7.1. As of the Settlement Effective Date, the Plan (subject to Independent Fiduciary approval as required by Section 2.1) and the Class Members (and their respective heirs, beneficiaries, executors, administrators, estates, past and present partners, officers, directors, agents, attorneys, predecessors, successors, and assigns), on their own behalf and on behalf of the Plan, shall fully, finally, and forever settle, release, relinquish, waive, and discharge all Released Parties from the Released Claims, whether or not such Class Members have received or will receive a monetary benefit from the Settlement, whether or not such Class Members have actually received the Settlement Notice, whether or not such Class Members have filed an objection to the Settlement or to any application by Class Counsel for an award of Attorneys' Fees and Costs, and whether or not the objections or claims for distribution of such Class Members have been approved or allowed.

7.2. As of the Settlement Effective Date, the Class Representative, the Class Members, and the Plan (subject to Independent Fiduciary approval as required by Section 2.1) expressly agree that they, acting individually or together, or in combination with others, shall not sue or seek to institute, maintain, prosecute, argue, or assert in any action or proceeding (including but not limited to an IRS determination letter proceeding, a Department of Labor proceeding, an arbitration or a proceeding before any state insurance agency or other department or commission), any cause of action, demand, or claim on the basis of, connected with, or arising out of any of the Released Claims. Nothing herein shall preclude any action to enforce the terms of

this Settlement Agreement in accordance with the procedures set forth in this Settlement Agreement.

7.3.  Class Counsel, the Class Representatives, Class Members, or the Plan may hereafter discover facts in addition to or different from those that they know or believe to be true with respect to the Released Claims. Such facts, had they been known, might have affected the decision to settle with the Released Parties, or the decision to release, relinquish, waive, and discharge the Released Claims, or the decision of a Class Member not to object to the Settlement. Notwithstanding the foregoing, each Class Member and the Plan shall expressly, upon the entry of the Final Approval Order, be deemed to have, and, by operation of the Final Approval Order, shall have fully, finally, and forever settled, released, relinquished, waived, and discharged any and all Released Claims. The Class Representatives, Class Members and the Plan acknowledge and shall be deemed by operation of the Final Approval Order to have acknowledged that the foregoing waiver was bargained for separately and is a key element of the Settlement embodied in this Settlement Agreement of which this release is a part.

7.4.  The Class Representatives, each Class Member, and the Plan hereby stipulate and agree with respect to any and all Released Claims that, upon entry of the Final Approval Order, the Class Members and Plan shall be conclusively deemed to, and by operation of the Final Approval Order shall settle, release, relinquish, waive, and discharge any and all rights or benefits they may now have, or in the future may have, under any law relating to the releases of unknown claims pertaining specifically to Section 1542 of the California Civil Code, which provides:

> A general release does not extend to claims that the creditor or releasing party does not know or suspect to exist in his or her favor at the time of executing the release and that, if known by him or her, would have materially affected his or her settlement with the debtor or released party.

Also, the Class Representatives, Class Members, and the Plan hereby stipulate and agree with respect to any and all Released Claims that, upon entry of the Final Approval Order, that the Class Members and the Plan shall be conclusively deemed to, and by operation of the Final Approval Order shall waive any and all provisions, rights, and benefits conferred by any law or of any State or territory within the United States or any foreign country, or any principle of common law, which is similar, comparable, or equivalent in substance to Section 1542 of the California Civil Code.

7.5.  <u>Dismissal With Prejudice</u>. The Class Action and all Released Claims shall be dismissed with prejudice.

7.6.     No Impact on Prior Releases. The Released Claims in the Class Action shall not invalidate or impair any prior release of claims by any Class Members against any of the Released Parties.

**8.     ARTICLE 8 – COVENANTS**

The Settling Parties covenant and agree as follows:

8.1.     Taxation. Plaintiffs acknowledge that the Released Parties have no responsibility for any taxes due on funds deposited in or distributed from the Qualified Settlement Fund or that the Plaintiffs or Class Counsel receive from the Gross Settlement Amount. Plaintiffs further acknowledge that any such tax payments, and any professional, administrative, or other expenses associated with such tax payments, shall be paid out of the Qualified Settlement Fund. Nothing herein shall constitute an admission or representation that any such taxes will or will not be due.

8.2.     Cooperation. Defendant shall cooperate with Class Counsel by using reasonable efforts to provide, to the extent reasonably accessible, information to identify Class Members and to implement the Plan of Allocation.

    8.2.1.  Defendant or Defense Counsel shall work with the Recordkeeper to provide to the Settlement Administrator data regarding Class Members (which may include names, dates of birth, the final four digits of social security numbers, last known primary address, and end-of-quarter account balances throughout the Class Period and thereafter shall be subject to the PII provisions of this Settlement Agreement), for purposes of effecting the administration of the Plan of Allocation. Plaintiffs, Class Counsel, Defendant, Defense Counsel, and/or the Recordkeeper, will not be responsible or liable in any way for ensuring the completeness or accuracy of the information provided pursuant to this section and it is understood that the transmitted information is based upon the data maintained currently by the Recordkeeper.

    8.2.2.  The Settlement Administrator shall use the information provided by Defendant, Defense Counsel, and/or the Recordkeeper pursuant to Section 8.2.1 for the sole purposes of compiling a preliminary list of Class Members to send the Class Notice and calculating payments pursuant to the Plan of Allocation.

8.3.     The Settling Parties shall reasonably cooperate with each other to effectuate this Settlement, including with respect to the Plan of Allocation, and shall not do anything or take any position inconsistent with obtaining a prompt Final Approval Order approving the Settlement unless expressly permitted by this Settlement Agreement. The Settling Parties shall suspend any and all efforts to prosecute and

to defend the Class Action pending entry of the Final Approval Order or, if earlier, termination of the Settlement Agreement.

9. **ARTICLE 9 – REPRESENTATION AND WARRANTIES**

9.1. Settling Parties' Representations and Warranties. The Settling Parties, and each of them individually, represent and warrant as follows, and each Settling Party acknowledges that each other Settling Party is relying on these representations and warranties in entering into this Settlement Agreement:

9.1.1. That they have diligently prepared the case pursuant to the Court's orders; that they are voluntarily entering into this Settlement Agreement as a result of arm's-length negotiations; that in executing this Settlement Agreement they are relying solely upon their own judgment, belief and knowledge, and the advice and recommendations of their own independently selected counsel, concerning the nature, extent, and duration of their rights and claims hereunder and regarding all matters which relate in any way to the subject matter hereof; and that, except as provided herein, they have not been influenced to any extent whatsoever in executing this Settlement Agreement by any representations, statements, or omissions pertaining to any of the foregoing matters by any Settling Party or by any Person representing any Settling Party to this Settlement Agreement. Each Settling Party assumes the risk of mistake as to facts or law. Each Settling Party further recognizes that additional evidence may come to light, but that they nevertheless desire to avoid the expense and uncertainty of litigation by entering into the Settlement.

9.1.2. That they have carefully read the contents of this Settlement Agreement, and this Settlement Agreement is signed freely by each Person executing this Settlement Agreement on behalf of each of the Settling Parties. The Settling Parties, and each of them individually, further represent and warrant to each other that he, she, they, or it has made such investigation of the facts pertaining to the Settlement, this Settlement Agreement, and all of the matters pertaining thereto, as he, she, they, or it deems necessary.

9.2. Signatories' Representations and Warranties. Each Person executing this Settlement Agreement on behalf of any other Person does hereby personally represent and warrant to the other Settling Parties that he, she, they, or it has the authority to execute this Settlement Agreement on behalf of, and fully bind, each principal whom such individual represents or purports to represent.

10.    **ARTICLE 10 – NO ADMISSION OF LIABILITY**

10.1.   The Settling Parties understand and agree that this Settlement Agreement embodies a compromise settlement of disputed claims, and that nothing in this Settlement Agreement, including the furnishing of consideration for this Settlement Agreement, shall be deemed to constitute any finding, admission, or suggestion of any wrongdoing or liability by any Defendant, or give rise to any inference of wrongdoing or admission of wrongdoing or liability in this or any other proceeding.

10.2.   This Settlement Agreement and the payments made hereunder are made in compromise of disputed claims and are not admissions of any liability of any kind, whether legal or factual. Defendant specifically denies any such liability or wrongdoing and states that it is entering into this Settlement Agreement to eliminate the burden and expense of further litigation. Further, the Class Representatives, while believing that the claims brought in the Class Action have merit, have concluded that the terms of this Settlement Agreement are fair, reasonable, and adequate to the Plan, themselves, and members of the Settlement Class given, among other things, the inherent risks, difficulties, and delays in complex ERISA litigation such as the Class Action. Neither the fact nor the terms of this Settlement Agreement shall be used, offered, or received in evidence in any action or proceeding for any purpose, except in an action or proceeding to enforce this Settlement Agreement or arising out of or relating to the Final Approval Order.

11.    **ARTICLE 11 – CONDITIONS TO FINALITY OF SETTLEMENT**

       This Settlement shall be contingent upon each of the following conditions in this Article 11 being satisfied. The Settling Parties agree that if any of these conditions is not satisfied, then this Settlement Agreement is terminated (subject to Defendant's right to waive the condition set forth in Section 11.6) and the Class Action shall for all purposes with respect to the Settling Parties revert back to the same status as if the Settling Parties never executed the Settlement Agreement.

11.1.   <u>Court Approval and Class Certification for Settlement Purposes</u>. The Court shall have certified the Settlement Class for settlement purposes pursuant to 28 U.S.C. § 23(b)(1),(2) (and Defendant will not object to this certification for settlement purposes), the Settlement shall have been approved by the Court, the Court shall have entered the Final Approval Order substantially in the form attached as **Exhibit D** hereto, and the Settlement Effective Date shall have occurred.

11.2.   <u>Finality of Settlement</u>. The Settlement shall have become Final.

11.3.   <u>Resolution of CAFA Objections (If Any)</u>. In the event that any of the government officials who received a CAFA Notice objects to and requests modification(s) to the Settlement, Class Representatives and Class Counsel agree to cooperate and work

with Defendant and Defense Counsel to overcome such objection(s) and requested modification(s). In the event such objection(s) or requested modification(s) are not overcome, Defendant shall have the right to terminate the Settlement Agreement pursuant to Article 12.

11.4. At least seven (7) calendar days before the Final Fairness Hearing, the United States Department of Labor does not file an objection to the Agreement or Settlement in any court, nor does it bring a claim against any Releasees relating to the Released Claims, nor does it notify any Releasee that it intends to file such a Claim.

11.5. At least seven (7) calendar days before the Final Fairness Hearing, another party does not file a separate class action that raises comparable claims against the same Releasees during some part of the same class period addressed by this Complaint.

11.6. Settlement Authorized by Independent Fiduciary. At least fourteen (14) calendar days before the Final Fairness Hearing, the Independent Fiduciary shall have approved and authorized in writing the Settlement and given a release to all of the Released Parties in its capacity as fiduciary of the Plan for and on behalf of the Plan in accordance with PTE 2003-39. If the Independent Fiduciary disapproves or otherwise does not authorize the Settlement or refuses to execute the release on behalf of the Plan, then the Settling Parties may mutually agree to modify the terms of this Settlement Agreement as necessary to facilitate an approval by the Independent Fiduciary and/or the Independent Fiduciary's release on behalf of the Plan. Otherwise, Defendant shall have the option to waive this condition, in which case such option is to be exercised in writing within ten (10) business days after the Settling Parties' receipt of the Independent Fiduciary's written determination, unless otherwise agreed by the Settling Parties.

## 12. ARTICLE 12 – TERMINATION, CONDITIONS OF SETTLEMENT, AND EFFECT OF DISAPPROVAL, CANCELLATION, OR TERMINATION

12.1. At their sole discretion, Defendants shall have the right to withdraw from this Settlement and terminate the Agreement if:

(a) At any time, another party files a separate class action that raises comparable claims against the same Releasees during some part of the same class period addressed by this Complaint.

12.2. The Settlement Agreement shall automatically terminate, and thereby become null and void with no further force or effect if:

12.2.1. Under Section 2.1, (a) either the Independent Fiduciary does not approve the Settlement Agreement or disapproves the Settlement Agreement for any

reason whatsoever, or Defendant reasonably concludes that the Independent Fiduciary's approval does not include the determinations required by the PTE 2003-39; and (b) the Settling Parties do not mutually agree to modify the terms of this Settlement Agreement to facilitate an approval by the Independent Fiduciary or the Independent Fiduciary's determinations required by PTE 2003-39; and (c) Defendant does not exercise its option to waive this condition as provided in Section 11.6;

12.2.2. The Preliminary Approval Order or the Final Approval Order is not entered by the Court in substantially the form submitted by the Settling Parties or in a form which is otherwise agreed to by the Settling Parties;

12.2.3. The Settlement Class is not certified as defined herein or in a form which is otherwise agreed to by the Settling Parties;

12.2.4. This Settlement Agreement is disapproved by the Court or fails to become effective, and the Settling Parties do not mutually agree to modify the Settlement Agreement in order to obtain the Court's approval or otherwise effectuate the Settlement; or

12.2.5. The Preliminary Order or Final Approval Order is finally reversed on appeal, or is modified on appeal, and the Settling Parties do not mutually agree to any such modifications.

12.3. If the Settlement Agreement is terminated, deemed null and void, or has no further force or effect, the Class Action and the Released Claims asserted by the Class Representative shall for all purposes with respect to the Settling Parties revert back to the same status as if the Settling Parties never executed the Settlement Agreement. All remaining funds deposited in the Qualified Settlement Fund, and any interest earned thereon, shall be returned to Defendants and/or Defendants' insurer within thirty (30) calendar days after the Settlement Agreement is finally terminated or deemed null and void.

12.4. It shall not be deemed a failure to approve the Settlement Agreement if the Court denies, in whole or in part, Class Counsel's request for Attorneys' Fees and Costs and/or the Class Representatives Case Contribution Awards and/or modifies any of the proposed orders relating to Attorneys' Fees and Costs and/or Class Representative's Case Contribution Award.

13.     **ARTICLE 13 – CONFIDENTIALITY OF THE SETTLEMENT NEGOTIATIONS AND PERMITTED SETTLEMENT-RELATED COMMUNICATIONS**

13.1.   Except as set forth explicitly below, the Settling Parties, Class Counsel, and Defense Counsel agree to keep confidential all positions, assertions, and offers made during settlement negotiations relating to the Class Action and the Settlement Agreement, except that they may discuss the negotiations and statements made to and shared with Class Members, the Independent Fiduciary, and the Settling Parties' tax, legal, and regulatory advisors, provided in each case that they comply with this Article 13 in all other respects.

13.2.   The Settlement Administrator, at the direction of Class Counsel, will establish a Settlement Website on which it will post the following documents or links to the following documents within one week following the district court's entry of the Preliminary Approval Order: the Complaint, Settlement Agreement and its Exhibits, Settlement Notice, Plaintiffs' Motion for Attorneys' Fees and Costs and Class Representatives' Case Contribution Awards, any Court orders related to the Settlement, any amendments or revisions to these documents, and any other documents or information mutually agreed upon by the Settlement Parties.

13.3.   Defendant, Class Representatives, Class Counsel, and Defense Counsel agree that they will not at any time make (or encourage or induce others to make) any public statement regarding the Class Action or the Settlement that disparages any Released Party. However, Defendant is free to make non-disparaging statements to their employees about the conclusion of this matter. Class Counsel may restate the allegations made in the Complaint for purposes of the motion for Preliminary Approval of the Settlement, motion for Final Approval of the Settlement, or the request for Attorneys' Fees and Costs, Administrative Expenses, and Class Representative Compensation, or as necessary to provide notice to the Settlement Class. This prohibition does not prohibit any Settling Party from making any statements pursuant to a valid legal process, a request by a regulatory agency, or as required by law.

13.4.   Defendant, the Class Representatives, Class Counsel, and Defense Counsel agree that they will not issue any press release regarding the Settlement, affirmatively contact any media sources regarding the Settlement, or respond to any request for comment on the Settlement by the media. Nothing in this section shall prevent Class Counsel from maintaining non-confidential information related to the Settlement on their websites, blogs, or social media accounts, or firm resumés or biographies, nor shall this section prevent notice as otherwise agreed upon by the Settling Parties.

13.5. Defendant, Class Representatives, Class Counsel, and Defense Counsel agree that they will not publicly disclose the terms of the Settlement until after the motion for preliminary approval of the Settlement has been filed with the Court, other than as necessary to administer the Settlement, or unless such disclosure is pursuant to a valid legal process, a request by a regulatory agency, or as otherwise required by law, government regulations, or order of the Court.

## 14. ARTICLE 14 – GENERAL PROVISIONS

14.1. The Settling Parties agree to cooperate fully with each other in seeking Court approvals of the Preliminary Approval Order and the Final Approval Order, and to undertake all tasks as may reasonably be required to effectuate preliminary and final approval and the implementation of this Settlement Agreement according to its terms. The Settling Parties agree to provide each other with copies of any filings necessary to effectuate this Settlement reasonably in advance of filing.

14.2. This Settlement Agreement, whether or not consummated, and any negotiations or proceedings hereunder are not, and shall not be construed as, deemed to be, or offered or received as evidence of an admission by or on the part of any Released Party of any wrongdoing, fault, or liability whatsoever by any Released Party, or give rise to any inference of any wrongdoing, fault, or liability or admission of any wrongdoing, fault, or liability in the Class Action or any other proceeding.

14.3. Defendant and Released Parties admit no wrongdoing, fault, or liability with respect to any of the allegations or claims in the Class Action. This Settlement Agreement, whether or not consummated, and any negotiations or proceedings hereunder, shall not constitute admissions of any liability of any kind, whether legal or factual. Subject to Federal Rule of Evidence 408, the Settlement and the negotiations related to it are not admissible as substantive evidence, for purposes of impeachment, or for any other purpose.

14.4. Defendant denies all allegations of wrongdoing. Defendant believes that the Plan has been managed, operated, and administered at all relevant times reasonably and prudently, in the best interest of the Plan's participants, and in accordance with ERISA, including the fiduciary duty and prohibited transaction provisions of ERISA.

14.5. Neither the Settling Parties, Class Counsel, nor Defense Counsel shall have any responsibility for or liability whatsoever with respect to (a) any act, omission, or determination of the Settlement Administrator, or any of their respective designees or agents, in connection with the administration of the Gross Settlement Amount or otherwise; (b) the determination of the Independent Fiduciary; (c) the management, investment, or distribution of the Qualified Settlement Fund; (d) the Plan of Allocation as approved by the Court; (e) the determination, administration,

calculation, or payment of any claims asserted against the Qualified Settlement Fund; (f) any losses suffered by, or fluctuations in the value of, the Qualified Settlement Fund; or (g) the payment or withholding of any taxes, expenses, and/or costs incurred in connection with the taxation of the Qualified Settlement Fund or tax reporting, or the filing of any returns. Further, neither Defendant nor Defense Counsel shall have any responsibility for or liability whatsoever with respect to any act, omission, or determination of Class Counsel in connection with the administration of the Gross Settlement Amount, or otherwise.

14.6.    The Released Parties shall not have any responsibility for or liability whatsoever with respect to the Plan of Allocation, including but not limited to the determination of the Plan of Allocation or the reasonableness of the Plan of Allocation.

14.7.    The Settling Parties acknowledge that any payments to Class Members or their attorneys may be subject to applicable tax laws. Defendant, Defense Counsel, Class Counsel, and Class Representatives will provide no tax advice to the Class Members and make no representation regarding the tax consequences of any of the settlement payments described in the Settlement Agreement. To the extent that any portion of any Settlement payment is subject to income or other tax, the recipient of the payment shall be responsible for payment of such tax. Deductions will be made, and reporting will be performed by the Settlement Administrator, as required by law in respect of all payments made under the Settlement Agreement. Payments from the Qualified Settlement Fund shall not be treated as wages by the Settling Parties.

14.8.    Each Class Member who receives a payment under this Settlement Agreement shall be fully and ultimately responsible for payment of any and all federal, state, or local taxes resulting from or attributable to the payment received by such person. Each such Class Member shall hold the Released Parties, Defense Counsel, Class Counsel, and the Settlement Administrator harmless from any tax liability, including penalties and interest, related in any way to payments under the Settlement Agreement, and shall hold the Released Parties, Defense Counsel, Class Counsel, and the Settlement Administrator harmless from the costs (including, for example, Attorneys' Fees and disbursements) of any proceedings (including, for example, investigation and suit), related to such tax liability.

14.9.    Only Class Counsel may seek enforcement of this Settlement Agreement on behalf of Plaintiffs and Class Members. Any individual concerned about Defendant's compliance with this Settlement Agreement shall notify Class Counsel and direct any requests for enforcement to them. Class Counsel shall have the full and sole discretion to take whatever action they deem appropriate that is not in contravention to this Agreement, or to refrain from taking any action, in response to such request. Any action by Class Counsel to monitor or enforce the Settlement Agreement shall

be done without additional fee or reimbursement of expenses from the Qualified Settlement Fund beyond the Attorneys' Fees and Costs determined by the Court.

14.10. This Settlement Agreement shall be interpreted, construed, and enforced in accordance with applicable federal law and, to the extent that federal law does not govern, North Carolina law.

14.11. The Settling Parties agree that the Court has personal jurisdiction over the Settlement Class and Defendant and shall maintain personal and subject-matter jurisdiction for purposes of resolving any disputes between the Settling Parties concerning compliance with this Settlement Agreement. Any motion or action to enforce this Settlement Agreement—including by way of injunction—shall be filed in the U.S. District Court for the Middle District of North Carolina or asserted by way of an affirmative defense or counterclaim in response to any action asserting a violation of the Settlement Agreement.

14.12. Each party to this Settlement Agreement hereby acknowledges that he, she, they, or it has consulted with and obtained the advice of counsel prior to executing this Settlement Agreement and that this Settlement Agreement has been explained to that party by his, her, their, or its counsel.

14.13. Before entry of the Preliminary Approval Order and approval of the Independent Fiduciary, this Settlement Agreement may be modified or amended only by written agreement signed by or on behalf of all Settling Parties. Following approval by the Independent Fiduciary, this Settlement Agreement may be modified or amended only if such modification or amendment is set forth in a written agreement signed by or on behalf of all Settling Parties and only if the Independent Fiduciary approves such modification or amendment in writing. Following entry of the Preliminary Approval Order, this Settlement Agreement may be modified or amended only by written agreement signed on behalf of all Settling Parties, and only if the modification or amendment is approved by the Independent Fiduciary in writing and approved by the Court.

14.14. The provisions of this Settlement Agreement may be waived only by an instrument in writing executed by the waiving party and specifically waiving such provisions. The waiver of any breach of this Settlement Agreement by any party shall not be deemed to be or construed as a waiver of any other breach or waiver by any other party, whether prior, subsequent, or contemporaneous, of this Settlement Agreement.

14.15. Each of the Settling Parties agrees, without further consideration, and as part of finalizing the Settlement hereunder, that it will in good faith execute and deliver such other documents and take such other actions as may be necessary to consummate and effectuate the subject matter of this Settlement Agreement.

14.16. All of the exhibits attached hereto are incorporated by reference as though fully set forth herein. The exhibits shall be Exhibit A – Notice of Class Action Settlement and Fairness Hearing; Exhibit B – Plan of Allocation; Exhibit C – Preliminary Approval Order; Exhibit D – Final Approval Order; Exhibit E – Form of CAFA Notice.

14.17. No provision of the Settlement Agreement or of the exhibits attached hereto shall be construed against or interpreted to the disadvantage of any party to the Settlement Agreement because that party is deemed to have prepared, structured, drafted, or requested the provision.

14.18. Principles of Interpretation. The following principles of interpretation apply to this Settlement Agreement:

14.18.1. Headings. Any headings included in this Settlement Agreement are for convenience only and do not in any way limit, alter, or affect the matters contained in this Settlement Agreement or the Articles or Sections they caption.

14.18.2. Singular and Plural. Definitions apply to the singular and plural forms of each term defined.

14.18.3. Gender. Definitions apply to the masculine, feminine, non-binary, and neuter genders of each term defined.

14.18.4. References to a Person. References to a Person are also to the Person's permitted successors and assigns, except as otherwise provided herein.

14.18.5. Terms of Inclusion. Whenever the words "include," "includes," or "including" are used in this Settlement Agreement, they shall not be limiting but rather shall be deemed to be followed by the words "without limitation."

14.19. Survival. All of the covenants, representations, and warranties, express or implied, oral or written, concerning the subject matter of this Settlement Agreement are contained in this Settlement Agreement. No Party is relying on any oral representations or oral agreements. All such covenants, representations, and warranties set forth in this Settlement Agreement shall be deemed continuing and shall survive the Settlement Effective Date.

14.20. Notices. Any notice, demand, or other communication under this Settlement Agreement (other than the Settlement Notice, or other notices given at the direction of the Court) shall be in writing and shall be deemed duly given upon receipt if it is addressed to each of the intended recipients as set forth below and personally

delivered, sent by registered or certified mail postage prepaid, or delivered by reputable express overnight courier or via e-mail:

IF TO THE CLASS REPRESENTATIVES:

> Brandon J. Hill
> Luis A. Cabassa
> Amanda E. Heystek
> Wenzel Fenton Cabassa, P.A.
> 1110 N. Florida Avenue, Suite 300
> Tampa, Florida 33602
> Telephone: (813) 379-2560
> bhill@wfclaw.com
> lcabassa@wfclaw.com
> aheystek@wfclaw.com

> Michael C. McKay
> MCKAY LAW, LLC
> 5635 N. Scottsdale Road, Suite 117
> Scottsdale, Arizona 85250
> Telephone: 480-681-7000
> mmckay@mckaylaw.us

> Marc Reed Edelman
> MORGAN & MORGAN PA
> 201 N. Franklin Street, Suite 700
> Tampa, FL 33602
> Telephone: (813) 577-4722
> medelman@forthepeople.com

> Jacob Matthew Norris
> NORRIS LAW FIRM, PLLC
> 1776 Heritage Center Drive, Suite 204
> Wake Forrest, NC 27587
> Telephone: (919) 981-4475
> matt@lemonlawnc.com

IF TO DEFENDANT:

> Howard Shapiro
> Charles F. Seemann, III.
> JACKSON LEWIS P.C.
> 601 Poydras Street, Suite 1400

New Orleans, LA 70130
Telephone: (504) 208-1755
Howard.Shapiro@jacksonlewis.com
Charles.Seemann@jacksonlewis.com

Michael E. Holzapfel
JACKSON LEWIS P.C.
200 Connell Drive, Suite 2000
Berkeley Heights, NJ 07922
Telephone: (732) 945-6054
Michael.Holzapfel@jackswonlewis.com

Any Settling Party may change the address at which it is to receive notice by written notice delivered to the other Settling Parties in the manner described above.

14.21. Entire Agreement. This Settlement Agreement and the exhibits attached hereto constitute the entire agreement among the Settling Parties. No representations, warranties, or inducements have been made to any party concerning the Settlement other than those contained in this Settlement Agreement and the exhibits thereto. It specifically supersedes any settlement terms or settlement agreements relating to the Defendant that were previously agreed upon orally or in writing by any of the Settling Parties.

14.22. Counterparts. The Settlement Agreement may be executed by exchange of executed signature pages, and any signature transmitted by facsimile, DocuSign or similar electronic signature service, or e-mail attachment with the entire Settlement Agreement for the purpose of executing this Settlement Agreement and that shall be deemed an original signature for purposes of this Settlement Agreement. The Settlement Agreement may be executed in any number of counterparts, and each of such counterparts shall for all purposes be deemed an original, and all such counterparts shall together constitute the same instrument.

14.23. Binding Effect. This Settlement Agreement binds and inures to the benefit of the Settling Parties hereto, their assigns, heirs, administrators, executors, and successors.

14.24. Destruction/Return of Confidential Information. The Settling Parties agree that the preliminary and final lists of Class Members are deemed Confidential, and that the Settling Parties shall have the right to continue to designate documents provided to any party in connection with this Settlement Agreement as Confidential.

IN WITNESS WHEREOF, the Settling Parties have executed this Settlement Agreement on the dates set forth below.

On Behalf of Plaintiffs, Individually and as Representatives of the Settlement Class:

July 18, 2025

Brandon J. Hill
Luis A. Cabassa
Amanda E. Heystek
WENZEL FENTON CABASSA, P.A.
1110 N. Florida Avenue, Suite 300
Washington, DC 20036
Telephone: (813) 224-0431
bhill@wfclaw.com
lcabassa@wfclaw.com
aheystek@wfclaw.com

Michael C. McKay
MCKAY LAW, LLC
5635 N. Scottsdale Road, Suite 117
Scottsdale, Arizona 85250
Telephone: 480-681-7000
Email: mmckay@mckaylaw.us

Marc Reed Edelman
MORGAN & MORGAN PA
201 N. Franklin Street, Suite 700
Tampa, FL 33602
Telephone: (813) 577-4722
medelman@forthepeople.com

Jacob Matthew Norris
NORRIS LAW FIRM, PLLC
1776 Heritage Center Drive, Suite 204
Wake Forest, NC 27587
Telephone (919) 981-4475
Email: matt@lemonlawnc.com

*Counsel for Plaintiffs*
*and the Settlement Class*

On Behalf of Old Dominion Freight Line, Inc.

July  21 , 2025

_____
Ross H. Parr
Senior Vice President – Legal Affairs
General Counsel and Secretary
Old Dominion Freight Line, Inc.
500 Old Dominion Way
Thomasville, NC 27360

4924-9213-7046, v. 1