IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| DAVID K. SEALY, KERRY CARTER and HARVEY L. DAVIS on behalf of the Old Dominion 401(k) Retirement Plan, and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>OLD DOMINION FREIGHT LINE, INC.,<br><br>Defendant. | 1:23CV819 |

## MEMORANDUM ORDER

This matter is before the court on Plaintiffs David K. Sealy, Kerry Carter, and Harvey L. Davis's unopposed motion for final approval of the class action settlement. (Doc. 47.) Plaintiffs have also filed an unopposed motion for attorneys' fees, costs, and case contribution awards. (Doc. 49.) Based on this information and for the reasons that follow, the motions will be granted.

I. SETTLEMENT

Rule 23(e) of the Federal Rules of Civil Procedure requires court approval of the settlement of the claims of any certified class. Proposed settlements that bind class members must be "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). To determine whether a proposed settlement meets this standard, a court should

consider:

> (1) the extent of discovery that has taken place; (2) the stage of the proceedings, including the complexity, expense and likely duration of the litigation; (3) the absence of fraud or collusion in the settlement; (4) the experience of counsel who have represented the plaintiffs; (5) the opinions of class counsel and class members after receiving notice of the settlement whether expressed directly or through failure to object; and (6) the probability of plaintiffs' success on the merits and the amount of the settlement in relation to the potential recovery.

Lomascolo v. Parsons Brinckerhoff, Inc., No. 08cv1310, 2009 WL 3094955, at *10 (E.D. Va. Sept. 28, 2009) (citing Flinn v. FMC Corp., 528 F.2d 1169, 1173-74 (4th Cir. 1975)). "There is a 'strong presumption in favor of finding a settlement fair' that must be kept in mind in considering the various factors to be reviewed in making the determination of whether a settlement is fair, adequate and reasonable." Id. (quoting Camp v. Progressive Corp., No. 01-2680, 2004 WL 2149079, at *5 (E.D. La. Sept. 23, 2004)).

Here, the court finds the proposed Rule 23 settlement to be fair, reasonable, and adequate. More than 44,000 settlement class members will ultimately receive a pro rata share of an estimated $1,200,000 as participants in the Old Dominion 401(k) Retirement Plan, based on the average account balance for each individual class member in proportion to the summed total of the average account balances for all class members. (Doc. 48 at 11, 21.)

2

Further, the Settlement Administrator successfully delivered 99.22 percent of all notices, and no objections have been made to the settlement. (Id. at 11.)

In considering the relevant factors, the court finds the following: (1) the parties have engaged in comprehensive and time-consuming discovery during nearly two and a half years of litigation, with class counsel reviewing tens of thousands of documents and consulting with expert witnesses; (2) the stage of the proceedings and the complexity, expense, and likely duration of continued litigation favor settlement; (3) the absence of any collusion or fraud in the agreement; and (4) Plaintiffs' counsel's experience in such cases, having handled numerous other Employee Retirement Income Security Act ("ERISA") class actions. (Id. at 14-16.) The court has also considered the opinions of class counsel and class members after receiving notice of the settlement, as no class member objected to the settlement. (Id. at 11.)

Finally, the court has considered the probability of Plaintiffs' success on the merits and the amount of the settlement in relation to the potential recovery. Defendants have agreed to pay roughly thirty-eight percent of Plaintiffs' potential monetary recovery, conferring an immediate benefit to the settlement class via payment to the retirement plan and distributed to members according to the allocation plan. (Id. at 3.) Of course, if the

3

factfinder ultimately entered judgment in favor of Defendant, class members would recover nothing on their claims.  Moreover, an independent fiduciary has approved and authorized the settlement.[*]  (Doc. 51-1 at 4); see also In re Wachovia Corp. ERISA Litig., No. 09cv262, 2011 WL 13262040, at *4 (W.D.N.C. Oct. 24, 2011) ("Non-opposition by the independent fiduciary is strong evidence in favor of the Settlement's adequacy.").  The court agrees with the independent fiduciary that, to the extent any of the transactions required by the settlement constitute a transaction prohibited by 29 U.S.C. § 1106(a), the transactions satisfy the provisions of Prohibited Transaction Exemption 2003-39.  See Class Exemption for the Release of Claims and Extensions of Credit in Connection with Litigation, 68 Fed. Reg. § 75632 (2003).  Finally, the proposed settlement appears to be the product of arms-length bargaining overseen by an experienced mediator and between experienced counsel, who have independently evaluated the likelihood of prevailing on their claims and defenses.  (Doc. 48 at 15-16.)  In fact, the settlement was reached only after the mediator, Robert A. Meyer, made a blind mediator's proposal that was eventually

---

[*] The independent fiduciary also found the requested attorneys' fees to be reasonable here in light of the likelihood of full recovery, the risks and costs and litigation, and the value of foregone claims.  (Doc. 51-1 at 10.)  Of course, the court retains the duty to ultimately determine the reasonableness of requested attorneys' fees.  See Fed. R. Civ. P. 23(h).

4

accepted by the parties. (Id. at 7-8.) Therefore, the settlement will be approved.

**II. ATTORNEYS' FEES AND COSTS**

Pursuant to Rule 23(h) of the Federal Rules of Civil Procedure, "the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." Here, the parties' agreement provides for an awarding of attorneys' fees. (Doc. 44-2 at 20.)

There are two primary methods for calculating attorneys' fees in the Fourth Circuit: the percentage of the fund method, and the lodestar method. Phillips v. Triad Guar. Inc., No. 09cv71, 2016 WL 2636289, at *2 (M.D.N.C. May 9, 2016); Hall v. Higher One Machs., Inc., No. 5-15-CV-670, 2016 WL 5416582, at *7 (E.D.N.C. Sept. 26, 2016). "The percentage of the fund method provides that the court award attorneys' fees as a percentage of the common fund," while "the lodestar method requires the court to 'determine the hours reasonably expended by counsel that created, protected, or preserved the fund,' then to multiply that figure by a reasonable hourly rate." Phillips, 2016 WL 2636289, at *2 (citation modified) (quoting In re MicroStrategy, Inc. Sec. Litig., 172 F. Supp. 2d 778, 786 (E.D. Va. 2001)).

In this case, Plaintiffs' counsel seek attorneys' fees based on the percentage of the fund method. (Doc. 50 at 4.) To determine

5

whether the fees sought under the percentage of the fund method are reasonable, the lodestar method may be used as a cross-check, as well as the twelve factors from Barber v. Kimbrell's, Inc., 577 F.2d 216, 226 n.28 (4th Cir. 1978). Phillips, 2016 WL 2636289, at *2-3; Kirven v. Cent. States Health & Life Co. of Omaha, No. 11-2149, 2015 WL 1314086, at *12 (D.S.C. Mar. 23, 2015) (collecting district court cases within the Fourth Circuit that use the lodestar method as a cross-check to ensure that the percentage of the fund method award is fair and reasonable).

The Fourth Circuit considers twelve factors in judging the reasonableness of an award of attorneys' fees:

> (1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorneys' fees awards in similar cases.

Barber, 577 F.2d at 226 n.28.

The parties have agreed that Plaintiffs' counsel will receive $633,333.33 in attorneys' fees, equal to one-third of the total settlement amount. (Doc. 50 at 4.) "In considering awards in

6

similar cases, courts look to cases of similar size, rather than similar subject matter." Boyd v. Coventry Health Care Inc., 299 F.R.D. 451, 465 (D. Md. 2014). The requested 33.33 percent award is within the general range of percentages that have been approved in other cases in this circuit. See id. ("Attorneys' fees awarded under the 'percentage of recovery' method are generally between twenty-five (25) and thirty (30) percent of the fund."); Phillips, 2016 WL 2636289, at *9 (awarding attorneys' fees of thirty percent of the settlement amount in a percentage of the fund case); see also Kruger v. Novant Health, Inc., No. 14cv208, 2016 WL 6769066, at *2 (M.D.N.C. Sept. 29, 2016) (noting that "courts have found that '[a] one-third fee is consistent with the market rate' in a complex ERISA 401(k) fee case" (alteration in original) (quoting Spano v. Boeing Co., No. 06-CV-743, 2016 WL 3791123, at *2 (S.D. Ill. Mar. 31, 2016))).

In considering the relevant Barber factors, the court finds the following: (1) the case required counsel to expend significant time and labor, as Plaintiffs' counsel invested more than 1,143 hours in litigating the claims in this case for nearly two and a half years (Doc. 50 at 22-23; Doc. 50-1 ¶¶ 24-25; Doc. 50-3 ¶¶ 9-11; Doc. 50-4 ¶¶ 9-11); (2) the novelty and difficulty of the questions raised weighs in favor of approving the fee because counsel had to address procedurally and substantively complex

7

ERISA issues (Doc. 50 at 21); (3) the skill required to properly perform the legal services weighs in favor of approving the fee because Plaintiffs had the benefit of counsel with extensive experience and knowledge in ERISA class actions (id. at 15-18); (4) the attorneys' opportunity costs in pressing the instant litigation weigh in favor of approving the fee because the significant involvement in time reduced counsel's ability to take on additional cases during this litigation, with counsel turning down other potentially remunerative work (id. at 19); (5) as to the customary fee factor, "[a] one-third fee is consistent with the market rate in complex ERISA matters . . . and reflects a customary fee for like work," Clark v. Duke Univ., No. 16-cv-01044, 2019 WL 2579201, at *3 (M.D.N.C. June 24, 2019); (6) the attorneys' expectations at the outset of the litigation weigh in favor of approving the fee because counsel undertook the case on a wholly contingent basis, thereby taking the risk of obtaining nothing if no recovery was obtained by Plaintiffs or the class (Doc. 50 at 18); (7) there were no time constraints imposed by the client or circumstances in this case, so the seventh factor is not applicable; (8) the results obtained weigh in favor of approving the fee, because counsel obtained a favorable result for the class (id. at 13-15); (9) the experience, reputation, and ability of the attorneys weigh in favor of approving the fee, because counsel

8

have significant experience litigating ERISA class actions across the country (id. at 15-18); (10) the undesirability of this case within the legal community is not material to this case, nor is (11) the nature and length of the professional relationship between attorney and client; and (12) the attorneys' fees awarded in similar cases factor weighs in favor of approving the settlement because fee awards of one-third are common in ERISA cases, see, e.g., Clark, 2019 WL 2579201, at *3; Sims v. BB&T Corp., No. 15-CV-732, 2019 WL 1993519, at *2 (M.D.N.C. May 6, 2019).

"A lodestar cross-check of the fees request confirms its reasonableness." Phillips, 2016 WL 2636289, at *7. "The purpose of a lodestar cross-check is to determine whether a proposed fee award is excessive relative to the hours reportedly worked by counsel, or whether the fee is within some reasonable multiplier of the lodestar." Id. (quoting Boyd, 299 F.R.D. at 467). The lodestar fee is "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate," Lyle v. Food Lion, Inc., 954 F.2d 984, 988 (4th Cir. 1992) (quoting Hensley v. Eckerhart, 461 U.S. 424, 433 (1983)), and it is presumptively reasonable, id. (citing Pennsylvania v. Del. Valley Citizens' Council for Clear Air, 478 U.S. 546, 565 (1986)). "When the lodestar method is used only as a cross-check, however, courts need not 'exhaustively scrutinize' the hours documented by counsel

9

and 'the reasonableness of the claimed lodestar can be tested by the court's familiarity with the case.'" Krakauer v. Dish Network, L.L.C., No. 14-CV-333, 2018 WL 6305785, at *5 (M.D.N.C. Dec. 3, 2018) (citation modified) (quoting Goldberger v. Integrated Res., Inc., 209 F.3d 43, 50 (2d Cir. 2000)).

Here, Plaintiffs' counsel represents that the lodestar amount is $656,390. (Doc. 50 at 23.) In total, the records reflect that counsel spent more than 1,143 hours litigating these claims. (Doc. 50-1 ¶ 24; Doc. 50-3 ¶ 9; Doc. 50-4 ¶ 10.) The lodestar amount is then based on counsel's actual hourly rates ranging from $600 to $850 for attorneys and $125 to $200 for paralegals. (Doc. 50-1 ¶ 24; Doc. 50-3 ¶ 9; Doc. 50-4 ¶ 10.) In comparison, counsel seeks $633,333.33 as their attorneys' fees, which would equate roughly to an average hourly rate of $554. (Doc. 50 at 4.) Moreover, counsel's present hourly rates have been approved in similar ERISA cases, including in the Middle District of North Carolina. See Sims, 2019 WL 1993519, at *3.

Counsel's request of attorneys' fees of $633,333.33 requires a negative lodestar multiplier, which is clearly within the range of multipliers district courts have found to be reasonable. See Phillips, 2016 WL 2636289, at *8 ("Courts have found that lodestar multipliers ranging from 2 to 4.5 demonstrate the reasonableness of a requested percentage fee."); Domonoske v. Bank of Am., N.A.,

10

790 F. Supp. 2d 466, 476 (W.D. Va. 2011) (collecting cases and finding that a 1.8 lodestar multiplier is "well within the normal range of lodestar multipliers"). Accordingly, Plaintiffs' counsel's requested fees are reasonable and therefore approved.

**III. LITIGATION EXPENSES**

"Under Rule 23(h), a trial court may award nontaxable costs that are authorized by law or the parties' agreement." Sims, 2019 WL 1993519, at *4. These costs and expenses are typically awarded in addition to the fee percentage. Smith v. Krispy Kreme Doughnut Corp., No. 05CV00187, 2007 WL 119157, at *3 (M.D.N.C. Jan. 10, 2007). "Reimbursable expenses include court costs, transcripts, travel, contractual personnel, document duplication, expert witness fees, photocopying, long distance telephone charges, [and] postal fees . . . ." Kelly v. Johns Hopkins Univ., No. 16-cv-2835, 2020 WL 434473, at *7 (D. Md. Jan. 28, 2020). Here, an expense reimbursement award is authorized by both the common fund doctrine and the parties' agreement. (See Doc. 44-2 at 20); Kruger, 2016 WL 6769066, at *6.

Counsel seek reimbursement of $34,853.46 in costs and expenses incurred in connection with the litigation, with declarations in support of their request. (Doc. 50 at 25; Doc. 50-1 ¶¶ 25-26; Doc. 50-3 ¶¶ 10-11; Doc. 50-4 ¶¶ 10-11.) These costs and expenses appear to reflect standard litigation-related

11

costs for mediation, filing fees, expert counsel, and travel. (Doc. 50 at 25.) The costs are also substantially lower than the costs and expenses found reasonable in similar ERISA class actions. See Kelly, 2020 WL 434473, at *7 (approving $53,539.78 of expenses); Sims, 2019 WL 1993519, at *4 (approving $737,377.63 of expenses). Accordingly, the court will approve Plaintiffs' counsel's request for litigation expenses as reasonable.

### IV. CLASS CONTRIBUTION AWARDS

Plaintiffs also seek class contribution awards of $5,000 each to Plaintiffs Sealy, Carter, and Davis. (Doc. 50 at 26.) "As part of a class action settlement, 'named plaintiffs . . . are eligible for reasonable incentive payments.'" Decohen v. Abbasi, LLC, 299 F.R.D. 469, 483 (D. Md. 2014) (alteration in original) (quoting Staton v. Boeing Co., 327 F.3d 938, 977 (9th Cir. 2003)). "A substantial incentive award is appropriate in [a] complex ERISA case given the benefits accruing to the entire class in part resulting from [the named plaintiffs'] efforts." Savani v. URS Pro. Sols. LLC, 121 F. Supp. 3d 564, 577 (D.S.C. 2015). "To determine whether an incentive payment is warranted, the court should consider the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, and the amount of time and effort the plaintiff expended in pursuing the litigation." Kirven, 2015

12

WL 1314086, at *13.

Plaintiffs Sealy, Carter, and Davis sacrificed their time to prosecute this action against their current or former employer. (Doc. 50 at 26.) For example, they produced personal documents, reviewed drafts of pleadings and briefs, and conferred with counsel at every stage of the litigation. (Id.; Doc. 50-1 ¶ 19.) Several factors demonstrate that the $5,000 contribution awards are reasonable: their roles in initiating this lawsuit; the time and effort they devoted to achieving a favorable resolution; their total level of involvement in the case; and the fact that the amount in question constitutes less than one percent of the total settlement. The awards will therefore be approved. See Kirkpatrick v. Cardinal Innovations Healthcare Sols., 352 F. Supp. 3d 499, 508 (M.D.N.C. 2018) (approving a contribution award of $10,000 for the named plaintiff); Ford v. Cardinal Innovations Healthcare Sols., No. 20-cv-736, 2022 WL 558376, at *5 (M.D.N.C. Jan. 21, 2022) (same).

**V. CONCLUSION**

For the reasons stated,

IT IS THEREFORE ORDERED that Plaintiffs Sealy, Carter, and Davis's unopposed motion for final approval of the class action settlement (Doc. 47) is GRANTED and the settlement is APPROVED.

IT IS FURTHER ORDERED that Plaintiffs' unopposed motion for

13

attorneys' fees, costs, and case contribution awards (Doc. 49) is GRANTED.

IT IS FURTHER ORDERED that the Settlement Administrator is directed to issue payment to the Old Dominion 401(k) Retirement Plan to be allocated to the class members in accordance with the terms of the Settlement Agreement's Plan of Allocation.

IT IS FURTHER ORDERED that this court retains jurisdiction over this case for purposes of resolving any issues pertaining to settlement administration.

IT IS FURTHER ORDERED that the above-captioned case is DISMISSED WITH PREJUDICE.

/s/   Thomas D. Schroeder<br>United States District Judge

February 13, 2026